HANNAH SHANNON v. LOUISE DELWER and Others.[1]

May 6, 1897.

Nos. 10,444—(86).

**Negligence—Dangerous Premises.**

Evidence considered, and *held* that it sustains the verdict herein, to the effect that the defendants were guilty of negligence, which was the proximate cause of the death of plaintiff's intestate, in leaving a ditch made by them in a public alley unguarded and unlighted, and that the deceased was not guilty of contributory negligence.

Appeal by defendants from an order of the district court for Washington county, Crosby, J., refusing a new trial after a verdict for plaintiff for $2,000.   Affirmed.

*J. N. Searles*, for appellant.
*Arctander & Arctander*, for respondent.

START, C. J.   Action to recover damages for the death of the plaintiff's husband and intestate, John Shannon, by the alleged negligence of the defendants.   Verdict for the plaintiff for $2,000, and the defendants appeal from an order denying their motion for a new trial. The defendants here claim, (a) that the verdict is not justified by the evidence, in that it does not show that the negligence of the defendants, conceding that they were negligent, was the proximate cause of the death of Shannon, but that it does conclusively show that he was guilty of contributory negligence; (b) that the trial court erred in refusing to give certain of their requests for instructions to the jury.

1. The questions whether the negligence of the defendants was the proximate cause of Shannon's death, and whether he was guilty of contributory negligence, are so closely connected that they may be considered together.   The evidence was practically undisputed, and tended to establish the facts following:

Union alley, in the city of Stillwater, while it was never formally laid out as a public street or alley, had been traveled and used as such for many years prior to Shannon's death, and must, for the purposes of this case, be regarded as a public alley.   It is 16 feet wide, and

[1] Reported in 71 N. W. 14.

runs north and south, connecting Chestnut and Nelson streets. The defendant Delwer, at the time of and prior to Shannon's death, owned a lot abutting on the west line of the alley, upon which she had a barn, set even with the line of the alley. At her request the defendant Peterson, shortly before the accident, raised the barn 26 inches, the sill thereof resting upon blocks and jackscrews. In the execution of this work, and as a part thereof, Peterson caused to be dug a ditch 20 inches wide and 26 inches deep in the alley, along and next to the east end of the barn. The ditch was as long as the barn was wide, and along its whole length, and, extending into the alley beyond the ditch for a distance of about two feet, a ridge of dirt from eight to ten inches high was thrown up in excavating the ditch. Upon this ridge there were scattered short pieces of two by four timber.

This was the condition of the ditch, ridge, and alley on the night that Shannon came to his death, October 24, 1895; and the defendants so left them unguarded by any fence or other barrier, and unlighted. There were no street lights in the alley, and it was so dark therein that the ditch could not be seen by a person passing it. Shannon was last seen alive between 10 and 11 o'clock of the night in question, and, as he separated from the person with whom he was then conversing, he said "he would take a short cut and go home," and then walked in the direction of this alley. He was found dead in the ditch about midnight. His feet rested on the bank of the ditch towards the alley, his hips were in the ditch, and his head was wedged under the sill of the barn, and thrown forward so that his chin rested upon his chest. He was facing the alley at a right angle, with his arms by his side. His hat was lying in the ditch near his left side. He was cold when found. His face and neck were congested and black. There was no appearance of a struggle, no marks of violence upon him, and there was nothing to indicate that he came to his death by foul play. The evidence warrants the conclusion that his death was due to suffocation caused by his head being forced and held against his chest by the sill of the barn. The evidence also justifies the finding of the jury that the defendants were guilty of negligence in leaving the ditch unguarded and unlighted.

These propositions are not here seriously controverted by the defendants. Their claim is that the position of Shannon's body in the

ditch when found tends to negative the idea that he fell into it while passing along the alley, but that it does show that he sat down on the side of the ditch, with his back to the barn, and then slipped or slid backward into the ditch; that the position of the body cannot be accounted for upon any other reasonable theory; hence, there was no evidence to justify the jury in finding that the defendants' negligence was the proximate cause of his death. While there was no direct evidence as to how Shannon came to his death, that is, how he came to be in the ditch in the peculiar position in which he was found, still we are of the opinion that the evidence was sufficient to justify the jury in finding that, at the time he fell into the ditch, he was using the alley for the purpose of lawful travel therein. His act in going in the direction of the alley when last seen alive, accompanied by the declaration that he was going home, supports this conclusion and, in connection with the other evidence, the inference that the proximate cause of his death was the defendants' negligence in leaving the ditch unguarded.

Speculate as we may as to how he got into the ditch, the fact remains that he did get there, but not by his own voluntary act, or by the wrongful act of another. There is no evidence in the case to suggest suicide or murder. His death resulted by his getting into the ditch, and the reason or cause why he was there may well have been, and probably was, the defendants' negligence in leaving the ditch unguarded. If it had been fenced, the probabilities are that he would not have fallen or slid into it. In any event, the evidence was such as to make it a question for the jury whether leaving the ditch unguarded and unlighted was the proximate cause of Shannon's death. The plaintiff was not bound to establish such cause by direct evidence. It was sufficient to do so by circumstantial evidence, the only possible evidence on this point that could be given in this case. Neither was the plaintiff bound to negative contributory negligence on the part of her intestate in using the alley.

This brings us to the question of such negligence on his part. There was evidence in the case tending to show that Shannon, for several years, was addicted to the drink habit, and occasionally would get drunk; that for a year before his death he did not drink, until the day of the accident, when he drank three or four times during the after-

noon and evening. The claim of the defendants, briefly stated, is that it is inconceivable that Shannon, while sober, permitted himself to get into the position in which he was found, while it is very probable that he might have done so under the stupefying effect of liquor; hence contributory negligence, under the admitted circumstances, is the only conclusion possible. The evidence tends to show that Shannon was not intoxicated when last seen alive, and it clearly warrants the finding that he was not. But it must be conceded that his position in the ditch indicates that possibly he may have been so when he fell or slid into it. He may, as suggested by the defendants, have sat down, while intoxicated, on the ridge of the ditch, and slid backward into it, so as to bring his head under the side of the barn; so, too, he may, if sober, have sat down for some legitimate purpose or reason, not knowing of the existence of the ditch, and slid backward into it; or he may have been walking along the alley, and have stumbled over the ridge or the pieces of lumber, and, in trying to regain his balance, have turned halfway round, and have fallen backward into the ditch. No conclusive presumption of his negligence can be drawn from the admitted physical facts of the case. If he sat down on the side of the ditch, as claimed, the presumption is that it was for a legal and proper purpose, as the burden was upon the defendants to establish his contributory negligence. The inference to be drawn from his position in the ditch was a question of fact for the jury. We are not justified by the evidence in holding, as a question of law, that he was guilty of contributory negligence.

2. The defendants also assign as error the refusal of the trial court to give their fourth, fifth, and sixth requests for instructions. Each of these requests contained several distinct propositions, some of which did not state the law correctly. There was a general exception to the refusal to give each request. The exception was too general to present any question for review on this appeal. But, this aside, the trial court in its general charge gave distinctly and emphatically so much of the requests as the defendants were entitled to have given.

Order affirmed.

CANTY, J. If the verdict in this case could be sustained only on the hypothesis that, when the deceased was passing along the alley,

he stumbled over the obstructions along the side of the ditch, and thereupon fell into the ditch in the position in which he was found, the verdict would, in my opinion, be built on an improbable conjecture, and could not be sustained. There is no reasonable probability that the accident occurred in that manner. The evidence tends to prove that the deceased entered this alley for the purpose of passing along through it, and that he was interrupted in his passage by some intervening cause besides the obstructions on the side of the ditch. What that intervening cause was, is left to conjecture. It might have been a stroke of apoplexy, or it might have been the assault of some unknown person, that caused him to stagger and fall into the position in which his body was found. But, even though there was some such intervening cause, the jury would, in my opinion, be justified in finding that the digging of the ditch and leaving it unguarded was the proximate cause, or at least one of the concurring causes, of the death. The defendants were guilty of negligence in digging the ditch and leaving it unguarded, and may be liable even though there was some such intervening cause. The cases collected in Clark v. Chambers, 3 Q. B. Div. 327, 17 Alb. Law J. 505, illustrate this principle quite fully.