[S. F. No. 2774. Department Two.—September 22, 1903.]

MAGGIE DYAS et al., Respondents, v. SOUTHERN PACIFIC COMPANY, Appellant.

ACTION FOR DEATH—NEGLIGENCE—INSECURE DERRICK—SUFFICIENCY OF EVIDENCE.—In an action for damages for the death of an employee of the defendant, brought by the widow and children, where there was ample evidence to show that the proximate cause of the death was the insecure condition of the platform upon which a derrick-car rested, and to which it was clamped, and the insufficiency of the counterbalance, and from the fracture of a cast-iron pintle or pivot arising from a sudden jar to the mast and boom in falling upon the deceased, the evidence was sufficient to support a verdict for the plaintiff.

ID.—EXPERT EVIDENCE AS TO DERRICK—CIVIL ENGINEERS.—Derricks, being of such limited use and complicated construction that an ordinary person is not familiar therewith, civil engineers of long experience who are familiar with the mechanical principles on which they are constructed and operated and with their strength and use, are competent to testify as expert witnesses in relation thereto, and as to the sufficiency and security of the counterbalancing and fastening of the derrick in question.

ID.—REMOTE PRIOR ACCIDENT—ABSENCE OF REPAIRS.—Evidence that about five years prior to the fall of the derrick which killed the deceased, a similar accident occurred with a hand derrick on the same platform, and that no repairs had since been made upon the platform,

was admissible to show the insecure condition of the substructure on which the derrick in question rested, and the defendant's knowledge of it and inattention to it. The difference in the derricks, and in the mode of their operation and the remoteness of the prior accident, are not tenable objections to such evidence.

ID.—HARMLESS INSTRUCTION—NAMING WITNESSES.—While it is advisable for the court not to name witnesses in an instruction, yet where an instruction as to the effect of the testimony as to the prior accident named the only witnesses who testified on that subject, the naming of them was not matter of prejudice.

ID.—EVIDENCE NOT OBJECTED TO.—Though, as a general rule, evidence of changes and repairs made subsequent to the accident is inadmissible, yet where evidence of such changes and repairs was admitted without objection or exception, error in admitting the same cannot be considered.

ID.—EVIDENCE—CONDITION OF TIES REMOVED BY WORKMEN.—Testimony was admissible to show that the ties removed from the substructure by the men employed by the defendant to take it down after the accident were so decayed that when carried away by them and thrown down, some of them broke in two. The incidental mentioning of facts from which the jury may infer that repairs were being made did not render the evidence as to the condition of the ties removed from the substructure inadmissible.

ID.—INSTRUCTIONS—ADMISSION OF PLEADINGS AS TO SUPPORT—DAMAGES.—An instruction that if the verdict be in favor of plaintiffs the jury may consider the admitted fact that the deceased was the sole support of the plaintiffs, and that he contributed all of his wages to their support, cannot be objected to on appeal, where the admission was expressly made in the pleadings, and no objection was made to the instruction in the court below, and the cause was tried on the theory that the admitted fact was proper matter to be considered by the jury in estimating the damages.

ID.—LOSS OF SOCIETY, COMFORT AND CARE.—It was proper to instruct the jury that in estimating the pecuniary loss to the plaintiffs the jury had a right to take into consideration the loss of society, comfort, and care suffered by them in the death of the husband and father.

ID.—MASTER AND SERVANT—DUTY OF MASTER TO INSPECT APPLIANCES.—The duty of a master to inspect the machinery and appliances furnished to his servants is affirmative, and must be continuously fulfilled and positively performed. In ascertaining whether this has been done or not, the character of the business should be considered, and anything short of this would not be ordinary care.

ID.—INSTRUCTION—WOODEN STRUCTURES—MATTER OF COMMON KNOWLEDGE.—An instruction to the jury that they may consider the liability of all wooden structures to get out of repair and unfit for use, which is matter of common knowledge, cannot be prejudicial.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

P. F. Dunne, for Appellant.

The defendant acted up to the measure of ordinary care, and the verdict taxing him with liability was against law. (*Bertha Zinc Co.* v. *Martin*, 93 Va. 791; *Baulec* v. *New York etc. R. R. Co.*, 59 N. Y. 356; *Hill* v. *Hill*, 78 Me. 116; *Washington etc. R. R. Co.* v. *McDade*, 135 U. S. 554, 569, 570; *Baltimore etc. R. R. Co.* v. *Baugh*, 149 U. S. 386, 387; *Baldwin* v. *Atlantic City R. R. Co.*, 64 N. J. L. 232, 234; *Sack* v. *Dolcese*, 137 Ill. 129; *Brymer* v. *Southern Pacific Co.*, 90 Cal. 496; *Sappenfield* v. *Main-Street etc. R. R. Co.*, 91 Cal. 48-56; *McNamara* v. *Macdonough*, 102 Cal. 575, 582; *Holmes* v. *Southern Pacific Co.*, 120 Cal. 357, 363; *Hennessy* v. *Bingham*, 125 Cal. 627, 633.) The opinion evidence was not admissible on the question of the safety of the derrick. (*Sappenfield* v. *Main-Street etc. R. R. Co.*, 91 Cal. 59; *Kauffman* v. *Maier*, 94 Cal. 280, 282; *Redfield* v. *Oakland etc. Ry Co.*, 112 Cal. 220, 225, 226; *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598, 604; *Shafter* v. *Evans*, 53 Cal. 32; *Mayor* v. *Pentz*, 24 Wend. 668, 673-676.) The testimony as to what occurred many years before the accident, relative to a different derrick, was inadmissible. (*Martinez* v. *Planel*, 36 Cal. 578.) The instruction singling out witnesses was erroneous. (*Thomas* v. *Gates*, 126 Cal. 3, 5.) Evidence of subsequent changes after the accident was inadmissible. (*Sappenfield* v. *Main-Street etc. R. R. Co.*, 91 Cal. 61-63; *Hager* v. *Southern Pacific Co.*, 98 Cal. 309, 311; *Turner* v. *Hearst*, 115 Cal. 394, 401; *Limberg* v. *Glenwood Lumber Co.*, 127 Cal. 598, 604.) The instruction that the jury were entitled to consider the fact that the deceased was the sole support of the plaintiffs, was erroneous. (*Mahoney* v. *San Francisco etc. Ry. Co.*, 110 Cal. 471, 476; *Green* v. *Southern Pacific Co.*, 132 Cal. 563, 564, 565.) The loss of society is not a proper ground of damages. (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 517, 518;[1] *Pepper*

[1] 29 Am. St. Rep. 143.

v. *Southern Pacific* Co., 105 Cal. 389; *Burke* v. *Arcata etc. R.
R. Co.,* 125 Cal. 364;[1] *Wales* v. *Pacific etc. Motor Co.,* 130 Cal.
524.) The instructions as to wooden structures was as to mat-
ters of fact, and erroneous. (*People* v. *O'Brien,* 130 Cal. 8, 9.)
The instructions as to continuous duty of the master was erro-
neous. (*Bertha Zinc Co.* v. *Martin,* 93 Va. 804; *Brymer* v.
*Southern Pacific Co.,* 90 Cal. 496; *Alexander* v. *Central L.
and M. Co.,* 104 Cal. 532, 536.)

Sullivan & Sullivan, for Respondent.

The defendant's negligence in the condition of the derrick
and support was the proximate cause of the death. (*Puck-
haber* v. *Southern Pacific Co.,* 132 Cal. 363; *Vizelich* v. *South-
ern Pacific Co.,* 126 Cal. 587; *Hawthorne* v. *Siegel,* 88 Cal.
159.[2]) The testimony of the expert witnesses was admissible.
(*Shafter* v. *Evans,* 53 Cal. 32; *Callan* v. *Bull,* 113 Cal. 593;
*Chico Bridge Co.* v. *Sacramento Transportation Co.,* 123 Cal.
178; *McFaul* v. *Madera Flume etc. Co.,* 134 Cal. 313; *Snowden*
v. *Idaho Quartz Mining Co.,* 55 Cal. 451; *Snyder* v. *Holt Mfg.
Co.,* 134 Cal. 327; *Hayes* v. *Southern Pacific Co.,* 17 Utah, 99;
*Prendible* v. *Connecticut River Co.,* 160 Mass. 131; *St. Louis
Ry. Co.* v. *Johnston,* 78 Tex. 536.) The instruction as to loss
of society, comfort, and care was proper. (*Burr* v. *Green
Mountain Mining Co.,* 57 Cal. 26; *Cook* v. *Clay-Street Hill
R. R. Co.,* 60 Cal. 604; *Lange* v. *Schoettler,* 115 Cal. 388.)
The instruction as to the continuing duty of the master was
proper. (2 Thompson on Negligence, p. 984; *Silveira* v. *Iver-
sen,* 128 Cal. 192; *King* v. *New York Central R. R. Co.,* 4
Hun, 770; *O'Donnell* v. *Alleghany Valley R. R. Co.,* 59 Pa. St.
239;[3] *Alexander* v. *Central L. and M. Co.,* 104 Cal. 539.)
Evidence of the former similar accident and the absence of
repairs was admissible. (*Craven* v. *Central Pacific R. R. Co.,*
72 Cal. 345; *Henry* v. *Southern Pacific R. R. Co.,* 50 Cal. 176;
*Vicksburg and M. Ry. Co.* v. *Putnam,* 118 U. S. 545, 553; *Dis-
trict of Columbia* v. *Armes,* 107 U. S. 524; *Grand Trunk
Ry. Co.* v. *Richardson,* 91 U. S. 454-474; *Mobile Ry. Co.* v.
*Ashcroft,* 48 Ala. 15; *Alabama Great Southern Ry. Co.* v.
*Hill,* 93 Ala. 514;[4] *Union Pacific R. R. Co.* v. *Hand,* 7 Kan.

[1] 73 Am. St. Rep. 52.          [3] 98 Am. Dec. 236.
[2] 22 Am. St. Rep. 291.         [4] 30 Am. St. Rep. 65.

380; *Smith* v. *New York Cent. Ry. Co.*, 66 Barb. 125; *Leonard* v. *Southern Pacific Co.*, 21 Or. 555; *Nashville R. Co.* v. *Johnson*, 83 Tenn. 667; *Texas and Pacific Ry. Co.* v. *De Miley*, 60 Tex. 194; *Missouri P. Ry. Co.* v. *Collier*, 62 Tex. 318; *Ohio V. and R. R. Co.* v. *Watson*, 93 Ky. 654.[1]) The admitted fact that plaintiffs received their entire support from the deceased was proper matter for the consideration of the jury. (*Annis* v. *Milwaukee and Northern R. Co.*, 67 Wis. 46;[2] *Burke* v. *Arcata etc. R. R. Co.*, 125 Cal. 366;[3] *Jager* v. *California Bridge Co.*, 104 Cal. 546.) An instruction as to matters of common knowledge is not harmful. (*Foley* v. *California Horseshoe Co.*, 115 Cal. 195;[4] *People* v. *Slater*, 119 Cal. 620.)

LORIGAN, J.—Plaintiffs, the widow and minor child of Joseph Dyas, deceased, brought this action against the defendant to recover damages for his death, claimed to have been occasioned through the negligence of defendant in furnishing insecure and unsafe appliances to the deceased, its employee, while engaged in its service. The case was tried before a jury, a verdict rendered for the plaintiffs for six thousand dollars, and from an order denying defendant's motion for a new trial it appeals.

The principal facts in the case are that the deceased, on October 26, 1896, was operating a derrick at one of the coal-bins of the defendant, in San Francisco, actually engaged in coaling the tender of a locomotive. This coal-bin is a long, narrow yard, surrounded by a fence, along the outer side of which, above and close to it, is a track upon which the tender to be coaled is run. The fence rises from the floor of the bin, to a point about opposite the axle of a locomotive's wheels, as it stands on the track. On the floor of the bin, paralleling this fence, and in close proximity to it, another railroad track is built, upon which the derrick in question stood. This track was laid on a platform consisting of uprights with ties stretched across, upon which the rails were spiked, and the ties floored with planking, so that the coal might not fall through under the platform, which was boarded around for protection.

Described in a general way, both as to its construction and

[1] 40 Am. St. Rep. 211.
[2] 58 Am. St. Rep. 484.
[3] 73 Am. St. Rep. 52.
[4] 56 Am. St. Rep. 87.

operation, this derrick consisted of a mast which passed through the floor, or car, portion of the derrick. The foot of the mast had attached to it a cast-iron cone, terminating in a pintle, or pivot. Upon this the mast rested, and revolved in another cone or cup, adjusted beneath the car and securely held in position by iron trusses attached to the sides, ends, and top of the car. The arm of the derrick extended over the top of the mast, making an obtuse angle with it. From the jib-end of the arm depended a cable for lifting the buckets by force of compressed air through the action of a piston at the top of the mast. The estimated weight of the loaded coal-bucket, such as was designed to be lifted, is fourteen hundred and fifty pounds, and attached to the side of the mast opposite the jib-end arm, as a counterbalance to this weight, was a metallic drum, two feet in diameter, and four feet in length, filled with sand, and weighing some thirteen hundred and seventy-five pounds.

The bucket was filled at the bin, hooked to the cable depending from the jib-end, and by force of the compressed air was hauled up to the jib, the derrick swung around, and the contents of the bucket emptied into the tender.

The derrick-car supporting the derrick-mast in question, was eight and one half feet long by six and one half feet wide, the edge overhanging the rails. This derrick-car, when the derrick was in operation delivering coal to a locomotive tender, was securely fastened to the rails so as to prevent motion, by two clamps on each side of the car. These clamps were attached to the sides of the car by bolts, were clutched to the rails, screwed up and made tight, and so constituted four vertical rigid clutches. This general description is sufficient for the purposes of this case, and to illustrate the points made by respective counsel upon this appeal. While the deceased was operating the derrick on the day in question, and as the bucket swung around towards the tender into which the coal was to be emptied, the derrick-car was wrenched from its fastenings, tipped over, and the derrick-mast and boom fell over against the fence, striking Dyas, and so injuring him that he died that evening.

The theory of the plaintiffs was, that the ties in the platform on which the derrick rested, were old, decayed, insecure, and

insufficient to hold the rails to which they were spiked; that the derrick itself was insufficiently counterbalanced, and that when the bucket swung towards the tender, it exercised so great a strain upon the defective ties, as to wrest the outer rail to which the derrick-car was clamped from its insecure fastenings, and tip the derrick-car over, with the result above stated.

The theory of defendant was, that the platform was in good and safe condition, and that the derrick at the time of the accident was in equally good condition, without any defect or flaw in any part of its construction, which diligence, duly exercised, could discover, and, as stated in the answer, the accident occurred by reason of the fact that, ''the socket or pocket made of iron, in which the lower end of said mast of said derrick rested, for some reason unknown to the defendant gave way, and said derrick fell,'' without any negligence or omission of duty on defendant's part.

This theory of defendant was based on the fact that, after the fall of the derrick, it was discovered that the pintle, or pivot, at the base of the mast, which was constructed of cast-iron, was broken, which break, defendant contended, arose from some latent, internal defect, which due diligence, exercised by defendant in equipping the derrick, could not, and did not discover, and hence defendant having exercised reasonable care and caution in the selection and equipment of the derrick, was not liable; and that the fracture of this pintle, or pivot, which uplifted the rails out of the ties, was the proximate cause of the accident.

On the part of the plaintiffs it was insisted that this pintle, or pivot, was broken through the jar received by the mast in its fall, upon the uplifting of the rail to which the derrick-car was clamped, on account of its insecure foundation, and the insufficient counterbalance upon the derrick.

We do not purpose discussing these theories at length, and we have only mentioned them as bearing on the points which are made by defendant on this appeal as to the admission of the testimony of certain experts. As far as the sufficiency of the evidence to support the verdict is concerned, there can be no question on that point. There was ample evidence to show that the proximate cause of the accident was the insecure condition of the platform upon which the derrick-car rested,

and to which it was clamped, and the insufficiency of the counterbalance. There was also sufficient evidence upon which the jury found, from the testimony of the experts in the case, that the fracture of the cast-iron pintle, or pivot, arose from the sudden jar to the mast and boom in falling, and not on account of some undisclosed, latent internal defect. As a matter of fact, there was no evidence in the case disclosing that any examination of the pintle, or pivot, after the accident, or up to the trial, disclosed the appearance, or probability of any such defect, and, that such defect existed, was purely matter of speculation.

There was, as we have said, expert evidence introduced in the case upon the part of plaintiffs as to the cause of the fracture of the pintle, as there was also on the question of the sufficiency of the counterbalance, and it is the admission in evidence of the testimony of several witnesses called on these subjects, which constitutes one of the grounds of complaint on appeal. Certain witnesses—Newbery, Condon, and Cobb—were called by plaintiffs. They were civil engineers, of many years' experience in their profession, familiar with the mechanical principles on which derricks are constructed, the mechanics on which they are operated, with their strength and use, and with the forces and direction of forces attending their operation. The inquiries addressed to these witnesses were as to the proper balancing of derricks, the effect of the breaking of a pivot upon an evenly balanced derrick; the effect on the cone and pivot by the fall of the derrick through the insecurity of the rail to which the derrick-car was fastened, and whether the fracture of the pivot could be occasioned through such fall; the proper dimensions of a counterbalance, and whether the one in use on the derrick in question was sufficient to effect the purpose for which it was designed, and other questions in this general line.

Counsel insist that these matters were not the subject of expert evidence; that they did not involve the knowledge of any science or art, but were within the experience of all men of common education, and that they called for the opinion of the witnesses upon a matter that the jury was to determine. While the general rule is, that witnesses must testify to facts and not conclusions, there are exceptions to the rule, and

we think the matters under inquiry come within the exception. The construction of derricks, the principles under which they are operated, the mechanical forces involved, the effect of imperfect construction, and the results necessarily incident thereto, are not matters of which ordinary persons have knowledge. These derricks are of limited use, and of somewhat complicated construction, and this, of itself, precludes the idea that an ordinary man is either familiar with their construction, or the principles of their operation. Under such circumstances it is always permissible to allow the testimony of those who, on account of special training and skill are competent to give it, to go before the jury. (*Callan* v. *Bull,* 113 Cal. 593; *McFaul.* v. *Madera Flume etc. Co.,* 134 Cal. 313; *Snyder* v. *Holt Mfg. Co.,* 134 Cal. 326.) The next error relied on is in the admission of the testimony of the witnesses Tanke and Hart, and an instruction of the court predicated on such testimony. Plaintiffs introduced evidence tending to show that no repairs had been made on the platform where the accident immediately in question had occurred, for more than five years prior thereto. They then proved by the witnesses Tanke and Hart that some five years prior to 1896 they were working a hand-derrick at the place where the Dyas accident occurred; and that the derrick-car they were using, which was clamped to the rails like the Dyas derrick, fell over, pulling the rail with it, and that the defendant knew of such accident.

Appellant contends that the difference in the derricks, the adjustment of the bucket, and the method of operation, made this evidence inadmissible, that it was too remote, and an entirely collateral matter. The character of the derrick, however, could make no difference. The pertinency of the evidence was as to the insecure condition of the substructure, upon which the derrick rested, and defendant's knowledge of it and inattention to it. Nor is the matter of remoteness any objection; the remoteness of the former accident, with the showing that no measures were taken in the interim to prevent a recurrence, is of the substance and materiality of the proof; in the natural order of decay, what was bad many years before, must, in the nature of things, be worse at the end of that time. Nor was it a collateral matter. The Dyas

derrick was operated upon the same substructure, as far as the method by which it was attached was concerned, and the condition of that substructure at the time of the accident was a proper subject of inquiry. If five years previously, the substructure was in such a condition as to fail to retain the derrick in its hold upon it, proof of that fact, coupled with proof of no repairs, was matter properly to go before the jury, in determining whether the substructure was not in a similar, if not worse condition, when Dyas was killed, and whether the accident was not directly attributable to that fact. We think there was no error committed in allowing the evidence, and that its admission comes within the general rule announced in the following cases: *Craven* v. *Central Pacific R. R. Co.,* 72 Cal. 345; *Henry* v. *Southern Pacific R. R. Co.,* 50 Cal. 176; *Butcher* v. *Vaca Valley etc. R. R. Co.,* 67 Cal. 518; *Liverpool etc. Ins. Co.* v. *Southern Pacific Co.,* 125 Cal. 434; 21 Am. & Eng. Ency. of Law, p. 517.

Relative to this evidence the court instructed the jury as follows: "In arriving at a verdict in this case, you have a right to take into consideration the testimony of witnesses John Tanke and William Hart, that several years before the accident to Dyas occurred, a derrick being operated in the very coal-yard wherein Dyas was employed, pulled from the planking or ties upon which the derrick was standing, a rail, to which the derrick-car was attached. The occurrence of accidents, similar to the one under scrutiny, is of greater or less value in determining how much care is reasonable to exact in a particular case."

Appellant complains of this instruction for two reasons: First, because it singles out particular witnesses named, and second, on account of the use of the words, "similar to the one under scrutiny." No harm could result to the appellant from the court mentioning these witnesses. No other witnesses but these testified on the subject, and no evidence was introduced to the contrary. While it is always advisable for the court in its charge to avoid the mention of witnesses by name, and in some instances, if done, it may be error, we do not think, under the circumstances here, that it was matter of prejudice.

As to the use of the term, "similar to the one under scru-

·tiny,'' the plaintiff had a right to have the jury instructed, that they could take into consideration previous accidents similar to the one in question, in determining the probable cause of a subsequent one. It is that similarity which permits them to be shown in evidence and considered by the jury. In its general effect this is what the court told the jury. It was stating a general principle of law, and, we think, stated it correctly. (*Liverpool etc. Ins. Co.* v. *Southern Pacific Co.,* 125 Cal. 434.)

The next error assigned is the admission in evidence of the testimony of the witness Bates concerning the weight of a heavier counterbalance, placed on the derrick after the accident, and the further admission of evidence of repairs made to the platform after the accident.

Appellant insists that this was evidence of subsequent conditions, materially prejudicial to its case. As a general proposition the admission of such evidence is erroneous.

In the case at bar, however, photographs were introduced and inspected by the jury, without objection, showing the heavier counterbalance, and the jury had visited defendant's yard and inspected the derrick with its heavier counterbalance on it. Aside from this, the witness testified he did not know its weight, and when asked to give an estimate of it he did so, but, to the question as to the estimate, counsel for appellant made no objection and took no exception.

As to the repairs: A photograph taken a few days after the accident, showing the general location of the scene of it, and the workmen actually at work repairing the substructure, was introduced in evidence without objection. Several witnesses—Connelly, Powis, and Schomberg—testified without objection to the making of the repairs.

The witness whose testimony is questioned was the father of deceased, who went to the coal-bin of the defendant the morning after the accident. What he was called to testify to was, that men were working there at the substructure, that he saw them handling the ties, and that they were so decayed that when the men carried them away and threw them down, some of them broke in two. We think the testimony was admissible, even if it does appear that the men were at work when the witness got there. Plaintiffs were entitled to show

the actual condition of the substructure as the witness per-
ceived it, and if it became necessary to an intelligent explana-
tion of the circumstances under which he saw it, and how it
came to be open to his observation, and what the effect of
handling portions of it resulted in, to disclose in a general
way, that men were working there, they had a right to do so.
Evidence which is admittedly material cannot be excluded
because the circumstances attending its production may dis-
close something immaterial, or even prejudicial to the other
party.    It is hardly possible to try any case where some
immaterial evidence may not creep in, and few cases where
something of a more or less prejudicial nature may not, with
the greatest vigilance, intrude.    The substantial effort in
this case was not to prove subsequent repairs, but to show
the condition of the lumber as the operation and action of
the workmen disclosed it, and we think that, simply because
in detailing his observations the witness incidentally men-
tioned facts, from which the jury might infer that repairs
were being made at the time, did not render the evidence
inadmissible or objectionable.

The court gave certain instructions which it is claimed by
appellant are erroneous.    The first is:  ''If your verdict be
in favor of plaintiffs, you may also consider the admitted
fact that the deceased was the sole support of the plaintiffs,
and that he contributed all of his wages to their support.''

This instruction is in the exact language of the complaint
and the fact was expressly admitted by the defendant in its
answer to be true.    It so became an admitted fact in the case.
It could have been called to the attention of the jury by
reading the pleadings, or discussed in argument to them.    The
cause was tried on the theory that the admitted fact that
the deceased was the sole support of plaintiffs, was a proper
matter to be considered by the jury in estimating the dam-
ages, and the plaintiffs had the right to have their case, in
the instructions of the court, put before the jury on the theory
upon which it was tried.    Having by its answer admitted the
fact as pleaded to be true, it became proper evidence in
the case, and having failed to specially call the attention of the
court to the impropriety of instructing the jury upon the sub-
ject—if it was improper—the appellant cannot be permitted

to raise the question now. (*Carpenter* v. *Ewing*, 76 Cal. 488.)

The Mahoney and Green cases (110 Cal. 471, and 122 Cal. 564) are not in point. In both these cases the evidence was admitted under objections.

The next instruction complained of was, that in estimating the pecuniary loss to plaintiffs, the jury had a right to take into consideration the loss of society, comfort, and care suffered by them in the death of the husband and father, Joseph Dyas. But this was a proper instruction to be given in cases like the one at bar, as was settled long ago (*Beeson* v. *Green Mountain etc. Co.*, 57 Cal. 38) and since approved. (*Lange* v. *Schoettler*, 115 Cal. 388; *Harrison* v. *Sutter-Street R. R. Co.*, 116 Cal. 156.)

The cases on this point cited by appellant (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 517;[1] *Pepper* v. *Southern Pacific Co.*, 105 Cal. 389; *Wales* v. *Pacific Electric Motor Co.*, 130 Cal. 521), were cases in which the court instructed the jury that in addition to such pecuniary damages as they might find the plaintiffs suffered, they had a right to award damages in addition to these pecuniary damages, as compensation for loss of society and comfort. The principal vice of the instructions in those cases was that the court (in such of them where loss of comfort and society were at all proper elements for consideration) instead of directing the jury as in the Beeson case, that such loss of comfort and society might be considered in estimating *pecuniary* damages only, told them that they might first determine what pecuniary damages they would allow, without considering loss of comfort and society as elements therein, and then, in addition to these *pecuniary* damages, determine what amount, as a separate and distinct damage, they would award for loss of comfort and society. These instructions allowed two standards for determining compensatory damages, whereas the law permits but one.

The court instructed the jury, with reference to the continuous duty of a master to supervise and inspect the machinery and appliances furnished his servants as follows: "The duty of inspection is affirmative and it must be continuously fulfilled and positively performed. In ascertaining

---

[1] 29 Am. St. Rep. 143.

whether this has been done or not, the character of the business should be considered, and anything short of this would not be ordinary care." This correctly states the law. (2 Thompson on Negligence, p. 984; *Silveira* v. *Iversen*, 128 Cal. 192; *Jager* v. *California Bridge Co.*, 104 Cal. 546; *Alexander* v. *Central L. and M. Co.*, 104 Cal. 539.)

Complaint is made that the court, in one of its instructions, informed the jury that they could consider the liability of all wooden structures to get out of repair and unfit for use. As this liability is matter of common knowledge no harm could possibly be done through the court telling them a fact of which they were already advised.

Appellant complains because the court refused four instructions tendered by it. We have examined the charge in connection with the instructions complained of, and find that it covers all matters to which the tendered instructions were pertinent; where it does not the instructions tendered were properly refused. Without going into detail on the subject, we have examined the point made by appellant as to the refusal of the court to permit counsel to propound particular questions to certain witnesses, and are satisfied the rulings of the court were proper.

We find no error in the record, and the order denying the motion for a new trial is affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.