[Sac. No. 2111.   Department Two.—October 3, 1914.]

LAVINIA CRABBE, as Administratrix of the Estate of William R. Crabbe, Deceased, Respondent, v. THE MAMMOTH CHANNEL GOLD MINING COMPANY (a Corporation), Appellant.

MINES AND MINERALS—SAFE PREMISES FOR EMPLOYEE TO WORK—DUTY OF INSPECTION.—It is not the duty of a mining employee to inspect the roof of an underground station where he is working, nor the shaft and tunnel; he is required only to exercise such an amount of care as the law presumes every man will employ for his interest and preservation. The duty of inspection rests with the employer.

ID.—MINERS—DEGREE OF CARE REQUIRED TO EXERCISE—NEW FORMATIONS.—Where miners are employed in drifting and are working into new formations, the degree of care which they are called upon to exercise for their own protection to avoid injury from a cave or from falling rock, is much greater than that imposed upon them in using the older workings which are or should be in a thoroughly protected condition, and which they have the right to assume are in such condition.

ID.—UNSAFE ROOF OF MINING STATION—ASSUMPTION OF RISK.—A right of action for the death of a mining employee by the fall of rock from the roof of an underground station in which he was working cannot be defeated on the ground that the roof was unsafe and that he knew or should have known it, in view of the abolition of the defense of assumption of risk by the Employer's Liability Act (Stats. 1911, p. 796.) .

ID.—CHANGING CONDITIONS IN PLACE OF WORK—FAILURE TO TIMBER MINE.—In such case the employer cannot interpose the defense that he was not bound to furnish a reasonably safe place to work because of the changing conditions, if there was extra timbering at the mouth of the shaft ready to make the place safe.

ID.—DEFENSE ARISING FROM CHANGING CONDITIONS—NECESSITY OF SPECIALLY PLEADING.—Such a defense, in order to be available in any event, must be specially pleaded.

ID.—CONTRIBUTORY NEGLIGENCE—NECESSITY AND SUFFICIENCY OF PLEADING.—In such action contributory negligence cannot be relied upon as a defense unless pleaded. And while the pleader may charge contributory negligence in general terms, yet he must plead the facts of such negligence, and the facts pleaded must show a causal connection with the injury. An answer which consists of a general denial and general allegations that the accident was caused by the employee's own gross negligence and failure to use ordinary

care for his own protection, is not a sufficient pleading of the defense of contributory negligence.

ID.—NATURE OF PLEA OF CONTRIBUTORY NEGLIGENCE.—Contributory negligence is in its nature a plea of confession and avoidance. Contributory negligence in law is predicated upon the existence of negligence upon the part of the defendant, the responsibility for which he avoids by showing a concurrent and contributing negligence upon the part of the person injured.

ID.—EXERCISE OF ORDINARY CARE—PRESUMPTION.—Where a miner working in an underground station is killed by rock falling from the roof, and there are no witnesses to the accident, the law presumes that he was taking ordinary care for his own safety; and if there is no evidence tending to rebut this presumption, instructions on the subject of contributory negligence are properly refused in an action for his death.

ID.—WRONGFUL DEATH—MEASURE OF DAMAGES.—An award of twenty thousand dollars for the death of a skillful miner, to his widow and four children is not excessive, where it appears that he was thirty-three years of age and had earned six dollars a day but was earning only three and a half dollars at the time of the accident.

ID.—ELEMENTS OF DAMAGES—LOSS TO SOCIETY.—In such case the jury is entitled to take into consideration the loss of society, comfort, and care suffered by the surviving children on account of the death of their father.

APPEAL from an order of the Superior Court of Butte County refusing a new trial. John C. Gray, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, for Appellant.

Lon Bond, and John H. Crabbe, for Respondent.

HENSHAW, J.—William R. Crabbe, a skilled and experienced miner, aged thirty-three years, was killed by a falling stone while at work under ground in the mine of appellant. His administratrix brought this action for damages. It was tried before a jury; verdict passed for plaintiff in the sum of twenty thousand dollars, and judgment followed the verdict. Defendant moved for a new trial, and from the order denying its motion prosecutes this appeal.

Defendant's mine comprised a tunnel leading from the surface into a mountain for a distance of one thousand two hundred feet. There the tunnel connected with a shaft ex-

'tending downward about two hundred feet to what is known as a "station," which is an excavated underground room. The underground room in this case was twelve feet wide, twenty feet long, and ten feet high. From the end of the station opposite the shaft another tunnel or "drift" was being driven in the hope of finding a pay gravel channel. Plaintiff's intestate, with a companion, was at work excavating in this drift, which at the time of the accident extended from twenty-five to thirty feet from the station. He was "mucking" or carrying out the waste material to the end of the shaft in the station, whence it was conveyed out of the mine. While so engaged a stone in the roof of the station fell upon him and caused his death. The complaint charged negligence in failing properly to timber this station so as to prevent rock falling from the roof thereof. The answer made denial and affirmatively charged that the accident which resulted in Crabbe's death "was due to and caused by his own gross negligence and failure to exercise and use ordinary care for his own protection." The injury which resulted in Crabbe's death befell him on the thirteenth day of September, 1911, when the Employers' Liability Act was in force. This act was also in force at the time of the trial of the action. (Stats. 1911, p. 796.)

At the time of the accident the station had been but partially and incompletely timbered. An additional set of timbers was placed near the mouth of the shaft ready for use and was visible to the deceased as he went to and from his labors. No work had been done toward making the station safe and secure for two weeks before the accident, during which time the timbers remained at the mouth of the shaft.

In argument appellant takes the position that the station was reasonably safe and had been made reasonably safe for the conduct of the mining operations which were under way; that the blasting in the drift had a tendency to jar and loosen the rock both in the drift and in the station; that it was the duty of the deceased as an experienced miner to observe the condition of the mine and station, and when that condition called for additional timbering in the station, to report this fact to the superintendent or foreman; that it was likewise Crabbe's duty, as a matter of common prudence for his own safety, to notice "if anything appeared out of the way, rendering it dangerous, and to report that condition promptly."

The evidence of defendant's superintendent and foreman is to the effect that the station was in a reasonably safe condition. The opposing evidence is that it was unsafe, and the incontestable fact is that if the roof had been supported by the additional timbers the accident could not have happened. All of the evidence is to the effect that Crabbe was engaged in the performance of his regular duties as miner. There is not a scintilla of evidence that he was careless or negligent in the performance of those duties, unless such an inference is to be drawn from the fact that while wheeling the loosened rock from the face of the tunnel through the station to the shaft a large stone from the unsupported roof of the station fell and killed him. If such a fact as this warrants even an inference of negligence upon the part of a miner, it must come from the position which appellant asserts, that it is the duty of miners continually to observe the condition of the mine for their own safety. But even if this be conceded to be true, and only to a very limited sense can it be said to be true, no inference can be drawn that if he had inspected the roof he could have detected the hazard and the imminence of his danger. Indeed, it would be a much more natural inference that if he had paused for such an examination he would have been killed while making the inspection, since the roof of the station was ten feet high and, with the lights which miners carry, to inspect it necessitated standing under the point to be inspected and holding high the light. We say that the doctrine for which appellant contends is true only in the most limited extent—the duty namely of continued inspection of the condition of the mine. Such duty of inspection is the duty of the employer, and it should be performed with all proper care by the employer's agents. (*Dyas* v. *Southern Pacific Co.,* 140 Cal. 308, [73 Pac. 972].) In this case it is contended by appellant that it was so properly performed by the superintendent and foreman. To say that in a mine such as this it is the duty of each miner, holding high his light, to inspect the roof of the station and the shaft and the condition of the tunnel, is to say that the mine owner owes them no duty in this regard. Moreover, a miner who did, without special instruction from the owner, so employ his time in observation and inspection and not in his regular miner's work, would remain in the employ of the mine owner only until the fact was discovered.

The truth of the matter is that a miner under such circumstances is charged with the duty of exercising only such an amount of care as the law presumes that every person will employ for their own interest and preservation. The *quantum* of that care will depend upon and vary with the degree of hazard of the particular occupation. Where miners are employed in drifting and are working into new formations, the degree of care which they will be called upon to exercise for their own protection to avoid injury from a cave or from falling rock, will be very much greater than the degree of care imposed upon them in using the older workings which are or should be in a thoroughly protected condition, and which they have the right to assume are in such condition. But even if it be said that the station as used by Crabbe was in an unsafe condition and that he knew it, this amounts to no more than a declaration that Crabbe assumed the risk of a known hazard. But this fact, by the very terms of the Employers' Liability Act, no longer affords the employer a defense. (Employers' Liability Act, sec. 1, subd. 1.)

The argument of appellant that it was not bound to furnish a reasonably safe place for the work of deceased because of the changing conditions, is open to the two-fold answer: 1. That there were no such changing conditions as to the station which made it impracticable to make that safe, since the extra timbering lying unused at the mouth of the shaft would unquestionably have done this thing; and, 2. Such a contention is in the nature of an affirmative defense which to be availed of should be pleaded. (*Bird* v. *Utica Gold Mining Co.*, 2 Cal. App. 677, [84 Pac. 256].)

Appellant's especial complaint, however, is directed to the refusal of the court to give certain instructions proposed by it. One of these instructions was to the effect that if the deceased knew or should have known the unsafe condition of the station in time to report it to the superintendent and failed to do so, he was negligent. Again the court was asked to instruct the jury that if the negligence of the deceased was not slight and that of the defendant was not gross the verdict should be for the defendant. Other instructions going to the asserted contributory negligence of the deceased and the degree of that negligence, whether slight or gross, as contemplated by section 1 of the Employers' Liability Act, were either refused or given in modified form. Over the

action of the court in these respects appellant has no just cause for complaint, fundamentally because appellant's pleading did not justify the giving of these instructions, and, secondarily, because the evidence in the case did not call for them. Appellant's answer, as above indicated, consisted of a denial that its negligence occasioned the death of Crabbe, and then it affirmatively declared, as above quoted that his death was "caused by his own gross negligence and failure to exercise and use ordinary care for his own protection." Contributory negligence in this state is an affirmative defense which must be pleaded. While the pleader may charge the contributory negligence in general terms, yet he must plead the facts of such negligence, and the facts pleaded must show a causal connection with the injury. (*Smith* v. *Buttner,* 90 Cal. 95, [27 Pac. 29] ; *Stephenson* v. *Southern Pacific Co.,* 102 Cal. 144, [34 Pac. 618, 36 Pac. 407].) In this case the pleader does not plead contributory negligence as such at all, for contributory negligence is in its nature a plea of confession and avoidance. Contributory negligence in law is predicated upon the existence of negligence upon the part of the defendant, the responsibility for which he avoids by showing a concurrent and contributing negligence upon the part of the person injured. (*Cogdell* v. *Wilmington & W. R. Co.,* 132 N. C. 852, [44 S. E. 618] ; *Newport L. & A. T. Co.* v. *Pirmann,* 26 Ky. Law Rep. 933, [82 S. W. 976] ; *Watkinds* v. *Southern Pacific R. Co.,* 38 Fed. 711, [4 L. R. A. 239].) Appellant's plea is therefore not a plea of contributory negligence, but consists of a denial of negligence upon the part of the pleader and an assertion of gross negligence upon the part of the deceased. But this asserted gross negligence itself is not pleaded in form sufficient to tender an issue. The case then rests upon the asserted negligence of defendant averred in the complaint and the denial of that negligence sufficiently pleaded in the answer. But even if so great an extension of the rules of pleading should be indulged in as to say that if the evidence (without a pleading of contributory negligence) showed such negligence upon the part of the injured person, the court should instruct accordingly, in this case such a showing is entirely lacking. The precise cause of Crabbe's death is well established. The precise amount of knowledge of conditions actually existing at the time of or just prior to his death is not known. It is, however, thoroughly well established that

if the station had been properly timbered the stone which caused Crabbe's death would not have fallen. Even if it be said that as an experienced miner he knew that the condition of the station was unsafe, in continuing to work in and through it he but assumed the known hazard, which as a defense is no longer available to appellant. It was necessary for appellant to plead and to show that even after the assumption of this known risk he negligently conducted himself in regard to it. Where death is occasioned under circumstances such as this, without eye witnesses, the law comes to the aid of the plaintiff who is pressing a suit for damages for the death, and that law is found in the presumption of the Code of Civil Procedure—namely, that a person takes ordinary care of his own concerns. (Code Civ. Proc., sec. 1963, subd. 4; *Cogdell* v. *Wilmington & W. R. Co.,* 132 N. C. 852, [44 S. E. 618]; *Shannon* v. *Delwer,* 68 Minn. 138, [71 N. W. 14].) This is a controvertible presumption, it is true, but until controverted it is evidence in accordance with which the jury is bound to decide. (Code Civ. Proc., sec. 1961.) There is no evidence in this case to rebut this presumption, and standing uncontroverted it is binding to the effect that the deceased was exercising the due amount of care in all matters connected with his progress through the station at the time when he met his death. There being no evidence, therefore, tending to show negligence upon the part of the deceased, all instructions touching that subject matter were properly refused. (*Sill* v. *Ceschi,* 167 Cal. 698, [140 Pac. 949].)

Deceased left four minor children. He was at the time of his death earning $3.50 a day. He had earned six dollars a day. His expectancy of life was over thirty-three years. The jury were entitled to take into consideration the loss of society, comfort, and care suffered by the surviving children on account of the death of their father. (*Dyas* v. *Southern Pacific Co.,* 140 Cal. 308, [73 Pac. 972].) It may not be said that under the facts and circumstances of this case the award of the jury was excessive.

The order appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.