[L. A. No. 1430. In Bank.—May 19, 1905.]

## AMOS A. TOWNE, Respondent, v. UNITED ELECTRIC GAS AND POWER COMPANY, Appellant.

MASTER AND SERVANT—NEGLIGENCE—INJURY FROM FALL OF TELEGRAPH-POLE—USE OF DULL PIKE-POLE—BURDEN OF PROOF.—The burden is upon the plaintiff to sustain his averment that an injury caused to him by the falling of a telegraph-pole, upon which he was engaged as a lineman, in removing wires, owing to use of a dull pike-pole as a brace, which was insufficient to keep the telegraph-pole in position, was caused by the negligence of the defendant, as master, in failing to perform his legal duty to furnish safe appliances.

ID.—PERFORMANCE OF DUTY BY MASTER—DUTY OF SERVANT—SELECTION OF APPLIANCE—NEGLIGENCE OF FELLOW-SERVANT.—The injury was not due to any negligence of the defendant, where it appears that a number of pike-poles, in good order, and such as were customarily used, was furnished to the servants, and it was their duty to know when they were dull and in need of sharpening, and to select a pike-pole in good order, and not to use a dull one. The negligent selection of a dull pike-pole by a fellow-servant, without looking at the point, when others in good condition were in reach, was the proximate cause of the injury, for which the master is not liable.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion.

Cochran, Williams & Phillips, and Hunsaker & Britt, for Appellant.

The defendant performed his duty by furnishing proper pike-poles, such as were customarily used. (*Brymer* v. *Southern Pacific Co.,* 90 Cal. 496, 498; *Dolan* v. *Sierra Ry. Co.,* 135 Cal. 435; *Corletti* v. *Southern Pacific Co.,* 136 Cal. 642, 645.) The burden of proof was upon the plaintiff to show that the injury was proximately caused by the negligence of his employer, the defendant. (*Stevens* v. *San Francisco etc. R. R. Co.,* 100 Cal. 554; *Vizelich* v. *Southern Pacific Co.,* 126 Cal. 587; *Trewatha* v. *Buchanan etc. Co.,* 96 Cal. 494; *Kevern* v. *Providence etc. M. Co.,* 70 Cal. 392, 394.) The negligence of a fellow-servant in selecting and using the dull

pike-pole as a brace instead of one fit for use was the proximate cause of the injury, for which the master is not responsible.   (Civ. Code, sec. 1970; *Kevern* v. *Providence etc. M. Co.*, 70 Cal. 392, 394; *Trewatha* v. *Buchanan etc. Co.*, 96 Cal. 494; *Vizelich* v. *Southern Pacific Co.*, 126 Cal. 587, 589; *Kerrigan* v. *Market-Street Ry. Co.*, 138 Cal. 506; *Burns* v. *Sennett*, 99 Cal. 363; *Mann* v. *O'Sullivan*, 126 Cal. 61;[1] *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417; *Noyes* v. *Wood*, 102 Cal. 389; *Daves* v. *Southern Pacific Co.*, 98 Cal. 13; *Callan* v. *Bull*, 113 Cal. 593; *Moody* v. *Hamilton Mfg. Co.*, 159 Mass. 70;[2] *Killea* v. *Faxon*, 125 Mass. 485; *Cullen* v. *Norton*, 126 N. Y. 6; *Amburg* v. *International Paper Co.*, 97 Me. 327; *McGee* v. *Boston Cordage Co.*, 139 Mass. 445; *Carroll* v. *Western Union Tel. Co.*, 160 Mass. 152; *Ling* v. *St. Paul etc. Ry. Co.*, 50 Minn. 160; *Rawley* v. *Colliau*, 99 Mich. 31; *Hefferen* v. *Northern Pacific R. R. Co.*, 45 Minn. 471; *Prescott* v. *Ball Engine Co.*, 176 Pa. St. 459;[3] *Kehoe* v. *Allen*, 92 Mich. 464;[4] *Thyng* v. *Fitchburg R. R. Co.*, 156 Mass. 13;[5] *City of Minneapolis* v. *Lundin*, 58 Fed. 525.)

Waters & Wylie, for Respondent.

The burden was upon the defendant to prove the fact peculiarly within his knowledge that other pike-poles fit for use were furnished.   (1 Greenleaf on Evidence, 111; *Great Western R. R. Co.* v. *Bacon*, 30 Ill. 347;[6] *People* v. *Nedrow*, 16 Ill. App. 192; *Schlesinger* v. *Hexter*, 34 N. Y. Super. Ct. 499.)   It was the duty of the master to furnish suitable appliances and keep them in repair and order.   (*Daves* v. *Southern Pacific Co.*, 98 Cal. 13; *Nixon* v. *Selby Smelting Co.*, 102 Cal. 464; *Higgins* v. *Williams*, 114 Cal. 181, 183.)   The servant has the right to rely upon the master's inquiry, and to assume that what was furnished was fit for use.   (*Magee* v. *Northern Pacific R. R. Co.*, 78 Cal. 430;[7] *Starr* v. *Kreuzberger*, 129 Cal. 123;[8] *Silveira* v. *Iverson*, 128 Cal. 192, 193.)

COOPER, C.—Plaintiff recovered judgment for twenty-five hundred dollars, damages alleged to have been sustained

---

[1] 77 Am. St. Rep. 149.
[2] 38 Am. St. Rep. 396.
[3] 53 Am. St. Rep. 683.
[4] 31 Am. St. Rep. 608.

[5] 32 Am. St. Rep. 425.
[6] 83 Am. Dec. 200.
[7] 12 Am. St. Rep. 69.
[8] 79 Am. St. Rep. 92.

by reason of the negligence of defendant while in its employ as a lineman. Defendant has appealed from the judgment and the order denying its motion for a new trial. The controlling question here is as to whether or not the injury was proximately caused by defendant's negligence.

The facts as shown by the findings are substantially as follows: At the time of the injury plaintiff was, and for several months had been, in the employ of defendant in its construction and repair department as a lineman. He was one of a gang of four men under the superintendency of one Bevans, who had directed the men to strip the wires from and remove certain electric-light poles, situated in the streets of Santa Monica, which, by reason of their long use, were believed to be decayed and unsafe. Plaintiff knew the character of the work required of him, the dangers attending it, and the fellow-servants employed to assist him. It is not claimed that defendant was negligent in the selection of the fellow-servants. The men were furnished, among other appliances, with two or three pike-poles (which were about ten or twelve feet in length, about two inches in diameter, one end having an iron ferrule on it and an iron pike in the end about one and a half inches in length) to be used in bracing the electric-light poles to be removed, and to keep them from falling while the man engaged in removing the wires was up the pole from which the wires were being removed. This was the method employed to safeguard the pole from falling and to prevent accidents, all of which plaintiff knew. All of the said pike-poles were of the character and construction usually and customarily used for such purpose, but one of said poles had become dull at the point and unfit to be used safely. The evidence does not show that any of the other pike-poles had become dull or out of repair, nor is there any evidence showing that Bevans or any of the men knew that the pike-pole was dull, but the condition of the pole could have been ascertained by an examination thereof. On the morning of the accident plaintiff was directed by Bevans to climb and clear the wires from one of said poles, which was twenty-five feet in height. Bevans also directed one of the men to brace the electric-light pole with a pike-pole on the unprotected side. The man took from the pike-poles, which were then and there on the ground within reach, the

pike-pole which had become dull and worn at the point, and
forced the barbed portion thereof into the electric-light pole,
about eight feet from the ground, and rested the other end
of the pike-pole upon the ground for the purpose of forming
a brace and holding the pole in place after the wires should
be removed therefrom.   There was also attached to the top
of the electric-light pole a rope, the other end of which was
held on the ground by one of the gang of men for the purpose
of holding the electric-light pole in place and keeping it from
falling.   While the electric-light pole was thus supported,
plaintiff, pursuant to the directions of Bevans, climbed it for
the purpose of stripping the wires.   While plaintiff was at
the top of the pole, after he had stripped the electric wires
from it, it fell, and caused him to fall to the ground and
receive serious injuries by reason thereof. The electric-light pole
fell because it was decayed at the ground, and because the
pike-pole, being dull, did not penetrate the electric-light pole
a sufficient depth to hold, but broke out or slipped, thus letting
the pole fall to the ground.

The court found that the injury to plaintiff was caused
by reason of the use of the pike-pole, which had become dull
at the point, and was not caused by the negligence of a fellow-
servant.   The burden was upon plaintiff to prove his allega-
tion that the injury was caused by the negligence of the
defendant.   The only act of negligence claimed is that the
defendant allowed the pike-pole to become dull or blunt
at the point.   If the defendant was guilty of negligence or
want of ordinary care it is liable, otherwise not.   Negligence
is the breach or omission of a legal duty.   (*Donovan* v. *Ferris,*
128 Cal. 54.[1])   It was the duty of the defendant to furnish
suitable tools and appliances to plaintiff and his fellow-
servants for the work which they had in hand.   The court
found that the pike-poles furnished "were of the character
and construction usually and customarily used for the purpose
for which the same were furnished."   Therefore, there was
no negligence in furnishing tools with which the work was
done.   If the pike-pole became dull by reason of use, it was as
much the duty of the plaintiff and his fellow-servants as
it was of defendant to have had it sharpened and repaired,
provided the means were furnished by defendant with which

[1] 79 Am. St. Rep. 25.

such repairing could be done. It is the duty of the employee to use ordinary care and skill, and it certainly is the duty of the employee to know whether the tools with which he is working have become dull, or in need of sharpening. Having eyes, he must use them, and being informed, he must act upon the information. If one of the pike-poles furnished by the defendant had had the point broken off by the plaintiff and his fellow-servants in taking down the very first pole they came to, and they had used such pike-pole with the broken point on the next electric-light pole and damage had been caused thereby, would it have been the negligence of the defendant? Would defendant have to have one man employed for the special purpose of watching the points of each pike-pole, another for the purpose of watching each guy-rope, and another for the purpose of watching the steel points attached to the shoes of the climber of the poles? We think that a reasonably prudent employer would have performed his duty by furnishing proper pike-poles, and that a reasonably prudent employee would not use a pike-pole after the point had become dull and blunt.

In the case of *Webber* v. *Piper,* 109 N. Y. 496, where the injury was caused by a circular saw, dull from use, the court said: "A master builder must furnish proper tools to his workmen, but it would not be his duty to sharpen every chisel as it became dull, or set every saw when the need arose."

In *Cregan* v. *Marston,* 126 N. Y. 568,[1] it was said to be the duty of the master to furnish safe appliances and "that is the master's right and duty, but the servant who uses them can and should keep them in order for their proper and safe daily use when furnished with the necessary means of so doing and when perfectly capable of correcting the defect."

In Bailey on Personal Injuries (vol. 1, sec. 259) it is said: "The general rule does not apply to defects arising in the daily use of an appliance which are not of a permanent character, and do not require the help of skillful mechanics to repair, but which may easily be and usually are repaired by the workmen, and to repair which proper and suitable materials are supplied."

In the late case of *Helling* v. *Schindler,* 145 Cal. 303, in which the injury was alleged to have been caused by the

---

[1] 22 Am. St. Rep. 854.

reason of the dullness of the knives of a buzz-planer, the cases referred to above were cited with approval by this court, and it was there said: "We are of the opinion that it is clear that any such mere dullness of the knives in the planer in question, produced by the ordinary use thereof, as might be sufficiently remedied by the use of a file in the hands of one of the employees, was a defect of such a nature that the employer could not be held responsible therefor, in the absence of other circumstances."

It was the duty of the fellow-servant using the pike-pole to have selected and used from "said pike-poles then and there on the ground" one fit and proper to be used. In picking up, selecting and using the dull pike-pole, without looking at the point, when others were within reach, the fellow-servant by his negligence caused the injury to plaintiff.

It is said in Shearman and Redfield on Negligence (5th ed., sec. 195): "The master performs his whole duty by using as much care in furnishing instrumentalities for the use of his servants as a man of ordinary prudence, in the same line of business, acting with a prudent regard to his own safety, would use in supplying similar things to himself, if he were doing the work. He is not in fault without proof of notice of the defect, nor as to repairs and replacements, until he has had a reasonable time after, or constructive notice, to perform his duty. The master is not expected to stand over each servant every moment, to discover instantly a defect in good materials and tools, caused by their careless use. Nor is he bound to keep such a close watch over the details of the work, as to enable him to repair every deterioration in instrumentalities of work resulting from a servant's use thereof, as soon as it occurs. . . . A master who has provided an ample supply of proper appliances, ready at hand, is not necessarily responsible to a servant for the neglect of a fellow-servant to use such appliances."

In the late case of *Amburg* v. *International Paper Co.,* 97 Me. 327, the plaintiff was injured by the falling of a heavy iron press roll, caused by a fellow-servant selecting and using an inch rope, which broke in lowering the roll, instead of using a larger and stronger one which was within his reach. The court held the master not at fault and the negligence to be that of a fellow-servant. The court said: "It is to be as-

sumed in such case, and the master has a right to assume, that the servants will use the means for renewal and repair which the master has placed at their hands; and that if ropes become worn and unsuitable, others will be selected in their stead out of the supply furnished for them by the master. And if the servant whose duty it is to make the selection is negligent in so doing, and selects an unsuitable or unsafe one, it is not the negligence of the master, but it is the negligence of a servant, for which the master is not responsible.''

In *Hefferen* v. *Northern Pacific R. R. Co.,* 45 Minn. 471, it was held that a father could not recover damages for injury to his minor son caused by the use of a worn and battered side-set, from which a thin scale of steel flew into the son's eye. The side-set was selected and used by a fellow-servant when others were provided. The court said: ''The defect and whatever risk there may have been were perfectly apparent; and if a workman should of his own choice and unnecessarily use a tool thus plainly defective, when others were provided for his use, he is not absolved from the consequences of his own choice. It cannot be said to be the duty of a master, under ordinary circumstances, who provides and keeps proper tools for the use of his servants, to see to it that all such as from use become obviously unfit for service are removed beyond the reach of his servants. The servant is no less bound to be careful concerning his own safety than is the master; and where proper instruments are provided for the use of the servants, and their ordinary duties require and enable them to select such as are suitable, they must act with reasonable discretion. Under such circumstances, it is a want of reasonable discretion for them to act blindly upon the assumption that none of the implements will ever become dull, or worn, or otherwise obviously defective. All human experience is to the contrary.''

The above case was followed and approved in *Ling* v. *St. Paul etc. Ry. Co.,* 50 Minn. 160, where it was held that the master was not responsible for damages caused by the falling of a heavy flue-sheet, which fell by reason of a fellow-servant selecting and using a defective iron hook when proper ones were within reach and accessible.

Where damages were caused to a servant by a sledge-hammer that had become cracked and battered by use, and

there were other sound and safe ones at hand, which the
servant might have selected and used, the master was held
not liable, and the negligence that of the servant (*Rawley* v.
*Colliau,* 90 Mich. 31) ; so where a molder was injured by the
escape of heated metal from a mold, caused by the selection
and use by a fellow-servant of a defective flask in making
the mold, where numerous flasks were on hand for use that
were not defective, the master was held not· liable (*Kehoe* v.
*Allen,* 92 Mich. 464) ;[1] and where plaintiff was badly injured
by a defective rope breaking while lifting a heavy piece of
machinery, the rope being selected by a fellow-servant, when
proper ones were within reach, the defendant was held not
liable.   (*Prescott* v. *Ball Engine Co.,* 176 Pa. St. 459.[2])   The
court there said: "We see no reason to doubt that the rigger
was a vice-principal, and as such charged with the duty of
keeping ropes on hand, some of which should be at all times
suitable for use.   But it was not his duty to select the rope
to be used on each occasion when a rope was wanted.   If good
ropes were in stock, and a poor one was used because of haste,
or carelessness, or mistake of judgment, it was not the fault
of the rigger as vice-principal, but of the workmen themselves;
and the injury suffered because of the unsuitable rope could
not give the injured person a cause of action against his em-
ployer.   In the nature of things the ropes will wear from
using. . . . If a poor one was used when a good one was
within reach this was negligence, and whether chargeable
to the plaintiff or to a co-employee, it relieves the defendant
from all liability for the injury sustained."

A case directly in point is *Carroll* v. *Western Union Tel.
Co.,* 160 Mass. 152.   There the plaintiff was injured by the
falling of a telegraph pole caused by the use of a shovel in
supporting the pole instead of using a proper appliance called
a "deadman."   The end of the deadman broke, and instead
of getting another like implement the fellow-servant picked
up and used a shovel.   The defendant was held not liable,
and the court said: "The short answer is, that there is no
evidence that the defendant did not furnish a sufficiency of
proper tools at the depot from which those which were used
were taken, or within convenient reach, and that when proper
appliances of this sort are furnished by the employer within

---

[1] 31 Am. St. Rep. 608.                [2] 53 Am. St. Rep. 683.

convenient reach in a case like the present, he has done his whole duty, and is not bound to see that every gang of workmen takes as many tools as the event may show to have been desirable.'' (See the following authorities in support of the same principle: *Thyng* v. *Fitchburg R. R. Co.*, 156 Mass. 13;[1] *New Omaha Thomson-Houston Electric Light Co.* v. *Rombold*, (Neb.) 97 N. W. 1030; *Cregan* v. *Marston*, 126 N. Y. 568;[2] *Burns* v. *Sennett*, 99 Cal. 363; *Callen* v. *Bull*, 113 Cal. 593.)

In the late case of *Kerrigan* v. *Market-Street Ry. Co.*, 138 Cal. 506, the plaintiff was injured by the falling of a lot of ties in front of defendant's car, which carried plaintiff with them under the car, the falling being caused by the sudden stoppage of the car and the stakes in front of the ties being too short and not of sufficient strength to hold the ties. Defendant had plenty of proper stakes on hand, within reach of plaintiff and his fellow-servants, which they could have selected and used but did not do so. It was held that it was not the duty of defendant to adjust and place the proper stakes on the car in front of the ties. The case of *Wall* v. *Marshutz*, 138 Cal. 522, is not in conflict with the rule as adopted in this case. In that case there was evidence tending to show that the appliance, an iron clamp, was defective, and that the injury was caused by such defective appliance. It was there said in speaking of the selection of tools or appliances by fellow-servants that the rule applies ''only to cases where the selection of the tools used in the work devolves upon the employees engaged in the work generally, one of whom is the person injured, and not where it devolves exclusively upon the foreman of the work.'' In the case at bar the selection of the pike-pole devolved upon the employees generally. It was not the duty of the foreman to go from one squad of men to another, simply for the purpose of picking up a pike-pole from the ground and handing it to the man about to use it. The men using the pike-poles were fully as competent as the foreman to select and use proper ones. Defendant performed its duty when it furnished the usual proper and safe appliances.

Respondent places much stress upon *Silveira* v. *Iversen*, 128 Cal. 187. In that case the contention of plaintiff was,

[1] 32 Am. St. Rep. 425.     [2] 22 Am. St. Rep. 854.

that "the reefing pennant was rotten, and that it broke, to his injury, and that in this respect defendants failed in their duty as his employers to provide safe appliances with which to do his work." The question as to the selection of a defective implement by a fellow-servant where proper ones are furnished and on hand is not discussed. We have found no case that sustains the plaintiff's contention here.

The judgment and order should be reversed.

Harrison, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Van Dyke, J.,   Henshaw, J.,
McFarland, J.,   Lorigan, J.

SHAW, J., concurring.—I concur: The case of *Wall* v. *Marshutz*, 138 Cal. 522, may be further distinguished. In the case at bar the employer did actually furnish to the employees a number of pike-poles to be used when required. The points of the pikes would gradually become blunt by use, and it was manifestly the duty of the employees, generally, and an implied condition of the contract of each, first, to observe when one became too blunt to be safely used, and either to repair them in that respect or return them to the employer for that purpose, and, secondly, when selecting one for use, to examine their condition and select one that was fit. In these respects the case is similar to *Helling* v. *Schindler*, 145 Cal. 303, cited in the principal opinion. In *Wall* v. *Marshutz*, 138 Cal. 522, the different kinds of clamps for use were not furnished to the employees generally, but were kept in a place apart from the place of use, and were selected by the foreman, and it was his particular duty to select the sort of clamp best adapted for the work in hand. The other employees were under no duty in respect of such selection.

ANGELLOTTI, J., dissenting.—I dissent: This case is clearly distinguishable from *Helling* v. *Schindler*, 145 Cal. 303, and kindred cases cited in the opinion. Those were cases where the implement became defective during the use thereof by certain employees, and the defect was incident to and caused by the use thereof by them, and was of such a nature

that the employees actually using the implement were bound to contemplate and take notice thereof. Such cases are not applicable where, as here, the tools and implements used by the men were delivered by the employer to his employees on the morning of the accident, and at the time of such delivery by the employer one of them was defective and unfit for use. The trial court found this to be the condition of affairs here, and that the accident was due to such defective condition. It further appears from the findings that the defect was of such a nature that it would be observed only on a careful examination. We have thus simply a case where the employer furnished to his employees an appliance defective and unfit for use, and the defect was not obvious. The fact that other appliances of a similar character in good condition were furnished at the same time cannot affect the question here presented. The employees had the right to assume that all the tools and implements delivered to them by their employer for immediate use by them were, at the time of such delivery, in a reasonably safe condition for such use, unless the defect was obvious. To hold otherwise appears to me to seriously encroach upon the rule as to the duty of the employer to furnish implements reasonably sufficient for the purposes intended.

BEATTY, C. J., dissenting.—I dissent: According to the findings of the superior court, Bevans was not simply the foreman of the gang of men engaged in removing the pole which fell. He was foreman of defendant's construction and repair department, and "all of said pikes and poles were under the charge and care of said Bevans, whose duty it was among other things to see that the same were kept in repair." As I understand the other findings, the two or three pike-poles furnished this gang of men were issued by Bevans as being all of them fit for use as braces. There is no evidence and no finding that any one of them was in better condition than the one used, and the fact that it was dull could only have been ascertained by a careful examination.

By this I do not understand that it required any prolonged or critical inspection of the point of the pike to discover its actual condition, but rather that it required some nicety of judgment to decide when one of these pikes had reached that

degree of dullness to cause it, after being "forced into the pole," to slide along the grain of the wood and splinter out, instead of penetrating further when the weight of the pole was thrown against it. If it did require such nicety of judgment to determine that the appliance was unsafe, it is an unwarranted assumption to say the plaintiff and his fellow-servants were bound to take notice of the fact when the foreman especially charged with the custody and repair of the pikes had issued it for his use. I find no distinction in principle between this case and *Wall* v. *Marshutz,* 138 Cal. 522. Bevans here, as much as Walsh in that case, was specially charged with the duty of selecting the proper appliance for the work in hand, and when he delivered three pikes to plaintiff and his fellow-servants to be used in the work to be done, it was an assurance, not that among them they would find one or two fit for use, but that they were all fit for use, and, considering his position and his duties, they were justified in trusting to his judgment unless his mistake was apparent, and that does not appear.