LEONARD COTTON OIL CO. v. BURNES.

(Court of Civil Appeals of Texas. Texarkana. April 27, 1911. On Motion for Rehearing, June 15, 1911.)

1. MASTER AND SERVANT (§§ 217, 203*) — INJURIES TO SERVANT—ASSUMPTION OF RISK— GENERAL RULES.

A servant assumes those risks resulting from defects which he knows or must necessarily know and those which commonly attend his employment, together with those risks which the employment involves, after the master has used reasonable care to furnish safe appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600, 538; Dec. Dig. §§ 217, 203.*]

On Motion for Rehearing.

2. MASTER AND SERVANT (§ 286*) — INJURIES TO SERVANT—QUESTIONS FOR JURY.

It being a former's duty to pack cotton seed meal in cloths, whether there was any particular hazard in using frayed or raveled cloths, held, under the evidence a question of fact for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1011; Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 124*) — INJURIES TO SERVANT—APPLIANCES—DUTY OF A MASTER.

A former in a cotton oil mill was injured through a frayed cloth catching upon a lever, which shut a machine down upon his hand. His duties were to pack cotton seed meal in large cloths, so that the oil could be pressed out. These cloths were then removed and returned to him, and in the process of removal were often torn and raveled. The master supplied a sufficient number of whole cloths, but there was a defective one among them. Held, that as it is the duty of a master to exercise ordinary care to furnish his employés with reasonably safe appliances, the act of the master in supplying a sufficient number of whole cloths does not necessarily exonerate him from the duty of inspecting these cloths; that duty depending upon what an ordinarily prudent employer would do under similar circumstances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**4. MASTER AND SERVANT (§ 185*) — INJURIES TO SERVANT—FELLOW SERVANTS.**

A servant who was injured through a defective appliance given him by another servant, whose duty it was to inspect it, cannot recover, unless it was the duty of the other servant to inspect the appliance with reference to its safety.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 406; Dec. Dig. § 185.*]

**5. TRIAL (§ 191*) — INSTRUCTIONS — ASSUMPTION OF FACTS.**

An instruction which assumes as a fact a matter in controversy is erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431; Dec. Dig. § 191.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by J. B. Burnes against the Leonard Cotton Oil Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Head, Dillard, Smith & Head, Cunningham & McMahon, and J. G. McGrady, for appellant. C. E. Mead, for appellee.

HODGES, J. The appellee sued the appellant for damages resulting from personal injuries, and recovered a judgment for the sum of $625.

The appellant is a private corporation engaged in the business of operating an oil mill. Burnes was employed as a meal cook and cake "former," and his injuries consisted of the mashing of his hand in the machinery with which he was working. The cake "former" is the employé who stands in front of the steam cooker, where the seed are prepared for being formed into cakes and thereupon placed in the press, where the oil is extracted. The man who operates the "former" also operates the cooker. The machinery of which the cake "former" consists is something like 3½ or 4 feet high. The man who operates it stands in front of that machinery. According to the testimony of Burnes, his work was performed in this manner: He was furnished with a number of pieces of cloth, made of camel's hair, about 5 feet long, 12 or 14 inches wide, and about one-eighth of an inch thick. These cloths were closely woven and made of strong material. The cloth is spread out in front of the cake "former"; the ends falling several inches over the sides of what is called the "ram." The operator then raises a lever to the left, which causes the carriage containing the meal to come forward, and from that is deposited on this cloth enough meal to make one cake. The lever is then dropped and the carriage goes back, leaving the cloth lying with the ends hanging down and meal piled in the center. The "former" then takes the ends of the cloth and folds them over the meal. A lever on his right is then raised, which causes the elevation of the ram, which presses the meal into a cake of sufficient solidity to permit its being handled on a flat pan and placed in the press. A "run" is said to consist of the forming of 45 cakes, and requires about 20 minutes time. After the oil is pressed from the cakes, they are then "punched out" and the cloths taken off by an employé called the "skinner," who uses for that purpose an iron hook. The process adopted for using and handling the cloths causes them to wear rapidly; some lasting only a few days and others not over one day. They break where folded, and ravel at the ends. When worn so as to be unfit for further use, they are thrown aside and new ones substituted. This was usually done by the "skinner," but the "former" also rejected and threw aside those he considered unfit when he discovered this had not been done by the "skinner." The latter, after taking the cloths off, put them on a shelf immediately in front of the "former," from which place they were taken by him and used as needed. Burnes testified that at the time he was injured he had taken the cloth from the shelf in front of him, where it had been placed by the "skinner," had spread it out over the ram, deposited the requisite quantity of meal, and reached to each side for the purpose of gathering up the ends and folding them over the meal; that as he did this the carrier came suddenly forward and caught his right hand and crushed his fingers. He afterwards discovered that this unexpected movement of the carrier was caused by a raveled thread from the end of the cloth on his left, which had become wrapped around the lever that moved the carrier, and that in raising the end of the cloth he had unwittingly pulled up the end of the lever. The negligence charged in the petition, and that relied on in the trial below, was the conduct of the "skinner" in furnishing Burnes with a defective meal cloth, one with raveled threads hanging from the end.

The sufficiency of the evidence to support the verdict is questioned upon two grounds: First, because there was no proof of negligence in furnishing the meal cloth which it is claimed caused the injury; and, second, if there was negligence, it was that of a fellow servant, the cake "skinner," who placed the cloth upon the shelf in front of Burnes in that condition. Conceding that the cloth was defective, one which Burnes in the ordinary discharge of his duties should not have been called upon to handle without notice of its condition, is that fact sufficient to convict the appellant of culpable negligence? Not if it had done its duty in supplying a sufficient number of cloths in good condition with which Burnes might perform his duties; and the selection therefrom of such as were to be used was a mere detail of the operation. The rule, as stated by an eminent authority, seems to be this: The master performs his duty by using as much care in furnishing instrumentalities for the use of the servant as

a man of ordinary prudence in the same line of business would use in supplying similar things to himself, if he were doing the work. He is not at fault without proof of notice of the defect, nor as to repairs .and replacements, until he has had a reasonable time after or constructive notice to perform his duty. The master is not expected to stand over each servant every moment to discover instantly a defect in good materials and tools caused by their use, nor is he bound to keep such close watch over the details of the work as to enable him to repair every deterioration in instrumentalities of work, resulting from a servant's use thereof, as soon as it occurs. A master who has provided an ample supply of proper appliances, ready at hand, is not necessarily responsible to a servant for the neglect of a fellow servant to use such appliances. Shearman & Redfield on Neg. (5th Ed.) § 195. The following also support the same conclusion: Towne v. United E. G. & P. Co., 146 Cal. 766, 81 Pac. 124, 70 L. R. A. 214, 2 Am. & Eng. Ann. Cas. 905, and notes; McConnell v. Iron Works, 187 N. Y. 341, 80 N. E. 190, 10 L. R. A. (N. S.) 419, 10 Am. & Eng. Ann. Cas. 205; Reeder v. C. C. L. Co., 129 Mo. App. 107, 107 S. W. 1016; 2 Labatt on M. and S. § 621; 4 Thompson on Neg. §§ 4850–4852. There is no contention that in this instance the master had not furnished a sufficient supply of good cloths. Burnes himself testified that the usual number kept on hand were about 55 or 60 pieces, while only 45 were required to make a run.

Appellant also complains of the following charge: "If the duties of plaintiff in the handling of meal cloths used in connection with his work, and manipulating the machinery at which he was at work, required that he should work rapidly and handle said meal cloths and manipulate said machinery in a hurried manner, and that by reason of such rapid work (if it was rapid) a person situated as plaintiff was and working as he was required to work, and possessing ordinary intelligence, would not reasonably have time and opportunity to inspect the meal cloths before being used, and to see whether they were in a safe condition to use, and if you further find from the evidence that the defendant, its agents, or servants furnished a defective and unsafe meal cloth to plaintiff for his immediate use, and that plaintiff attempted to use such defective meal cloth (if it was defective) without knowing of the defect and without having time and opportunity to inspect it, and the said defective meal cloth (if it was defective) proximately caused plaintiff to be injured as alleged, and if you further find that such defect, if any, in such meal cloth was not patent and open to a person situated as plaintiff was, then in that event plaintiff did not assume the risk, if any, in using or attempting to use said meal cloth in the condition that it was in at the time he attempted to use it, and would not be chargeable with negligence, either in at-

tempting to use it or in failure to discover the defective condition of said meal cloth, if it was defective."

[1] This is not a correct instruction on the issue of assumed risk. The servant not only assumes all risks resulting from defects of which he knows, or must necessarily in the ordinary discharge of his duties ascertain, but those which commonly attend his employment. G., C. & S. F. Ry. Co. v. Kizziah, 86 Tex. 81, 23 S. W. 578. The duty of the master to furnish safe appliances is not absolute, but only to exercise ordinary care to accomplish that end. Hence every risk which an employment still involves, after a master has done all that is required of him for the purpose of securing the safety of his employés, is assumed by them as a matter of law. 1 Labatt on M. and S. § 3. That principle is ignored in the charge quoted.

The judgment is reversed and the cause remanded.

### On Motion for Rehearing.

Both the appellant and the appellee have presented motions for rehearing in this case; the former asking that judgment be here rendered in its favor, and the latter assailing the correctness of what he conceives to be our conclusions regarding the sufficiency of the evidence to show liability. In view of the fact that the case is to be reversed and remanded for another trial, it is perhaps proper that our rulings upon the errors discussed should be more specifically stated. Upon more mature consideration, we have reached the conclusion that it should not be held, as a matter of law, on the facts disclosed by the record, that the appellant is not responsible for Burnes' injuries.

[2] It appears from the evidence that the meal cloths referred to in the testimony were designed and used for the purpose of receiving and conveying deposits of oil meal from the cooker to the press, and to hold the meal while the oil was being extracted therefrom. The heavy pressure to which these cloths were subjected caused them to adhere closely to the meal cake, and in the course of their removal were frequently torn and raveled. Their deterioration was rapid. Some cloths would not last more than a day; while others might be used for several days. It is true these cloths were simple devices, and to one unskilled in the business it may not be apparent that any particular hazard would likely attend their use by the "former" after they became worn and raveled at the ends. This, however, was a question of fact to be determined by the jury, and we cannot say that the testimony was not sufficient to justify the conclusion that they did become dangerous when in that condition.

[3] The duty of the master to exercise ordinary care to furnish his employés with reasonably safe instrumentalities and appliances is the same, whether these be meal cloths or the more complex mechanical imple-

ments used in the master's work. The vigilance demanded must in all cases be commensurate with the hazards likely to be encountered in the ordinary course of employment. Burnes had as much right to demand at the hands of the appellant the exercise of a proper degree of care in supplying him with safe meal cloths upon this occasion, as any other employé in another department of the service had to demand safe appliances with which to perform his duties. It is insisted that this duty of the appellant as the master was discharged when a sufficient supply of meal cloths in good condition were placed at the disposal of that group of employés to which Burnes belonged, from which to replenish their stock as this became depleted by deterioration. We were at first inclined to concur in that view, but upon more mature consideration have reached a different conclusion. It will be observed that the deterioration of these cloths from use does not occur while in the hands of the "former," the party who in this instance was injured, but in the press and in the process of removing them from the oil cakes, after having been taken from the press. They were then placed upon a shelf, to be again used by the "former." At what stages of their use, and how often, the master should be required to inspect the appliances with which his servants are required to work must depend upon the conditions and hazards attending each particular instance, and will be determined by what an ordinarily prudent employer would do under similar circumstances in looking after the safety of his employés.

[4] The testimony in this case does not make it clear as to just what duty had been imposed by the master upon the cake skinner, who placed the cloths upon the shelf for use by Burnes. The jury might have inferred from the testimony that the skinner was simply to inspect the cloths with a view to ascertaining their fitness for further use in holding meal, and without reference to their safety as mechanical appliances. This duty is not one which would involve the exercise of any of the functions peculiar to the master, and might be delegated. Negligence in the discharge of that duty would be that of a fellow servant, and an injury resulting therefrom would be one of the risks assumed by the "former." On the contrary, if the cake skinner was charged with the duty of looking after the safety of the cloths as appliances to be used, as well as their fitness for holding meal, then he was in one respect the personal representative of the master, and his neglect of that duty would be imputed to his employer.

[5] The court instructed the jury that, if they found from the evidence "that the defendant, its agents, or servants, furnished a defective and unsafe meal cloth to plaintiff for his immediate use," etc., this would not be among the risks which he assumed. This was assuming that the skinner who placed the cloth upon the shelf for use by Burnes was charged with the duty of inspecting the cloths with reference to their safety for use as appliances for labor, as well as their fitness for holding meal. That was an issue of fact upon which the jury should have been permitted to pass. But it does not follow from this that the appellant should be exonerated, because it had not imposed that duty upon the skinner or some other employé. It may have been guilty of culpable negligence in failing to provide for this service to be done at proper intervals during the progress of the work. It was the province of the jury to say whether or not the particular service was attended with such hazards as required the master, in order to meet the demands of prudence, to provide some system or means of inspection, with a view of keeping the appliances in a safe condition.

The motion of the appellant to reverse and render judgment in its favor is overruled; also that of the appellee asking that the former judgment rendered be set aside, and the case affirmed. The judgment will stand as originally rendered, but the opinion is modified as indicated by what is here said.