[L. A. No. 1712.  In Bank.—August 23, 1907.]

## THOMAS FOGARTY, Respondent, v. SOUTHERN PACIFIC COMPANY et al., Appellants.

NEGLIGENCE — RAILROAD — RULE AS TO " FLYING SWITCH " — FELLOW-EMPLOYEE.—A rule of a railroad company for the government of its employees, which provided that running or flying switches must not be made except where it would cause great delay to do the work in any other manner, and that "whenever they are made the train must first be stopped and before the engine is again started the switch and also the brakes on the car to be set out must be tested and great care used," in no degree adds to the liability of the company so as to make it liable to an employee for the negligence of a fellow-employee who was a member of the train crew making the flying switch, and who violated its provisions. Such rule simply relates to the manner in which the switching crew should perform the work of switching, and did not make those engaged merely in that work the agents of the company for the inspection and discovery of defects in the cars, for whose negligence it would be responsible to other employees; and a negligent failure on the part of one of the switching crew to comply with the rule is, as respects other employees, only the negligence of the employee, and not that of the company.

ID.—INJURY TO CAR-REPAIRER—INSTRUCTIONS.—In an action by a car-repairer of the railroad company, who was injured as the result of a "flying switch," made with a car having a defective brake, instructions which in effect left the question as to whether the company had been negligent in the matter of the inspection of the brakes to turn upon the violation of such rule by a member of the switching crew are erroneous, and necessitate a reversal of a judgment for the plaintiff. This result follows, although other instructions charged the jury directly to the contrary, and in terms too favorable to the defendant.

CLI Cal.—50

ID.—NEGLIGENT INSPECTION OF CAR—EVIDENCE.—In such an action, although there may have been sufficient evidence to have warranted the jury in finding that the company had been negligent in the matter of inspecting the defective car, if such negligence is not shown as matter of law, this court cannot say, in the face of such instructions, that the jury so found, in order to sustain a verdict for the plaintiff.

ID.—DUTY TO INSPECT CARS—REASONABLE CARE—DEFECTIVE BRAKE.—It is a primary and non-assignable duty of a railroad company to its employees to use reasonable care to discover and remedy any defect in a car as a completed appliance, and it is responsible to any employee injured by reason of its failure so to do, except to an employee whose duty it is to discover the defect, and whose negligent failure to do so contributes to his own injury. This requirement includes any defect in the adjustment of the brakes which renders them wholly ineffectual, however arising, just as fully as any other defect. The company cannot escape responsibility in this matter by any delegation of the duty.

ID.—REASONABLENESS OF CARE FOR JURY.—In an action by a car-repairer of a railroad company, who while working under a stationary car was injured by another car while making a "flying switch," and which was not subject to control by reason of a defective brake, the question of the company's negligence depends upon its failure to use reasonable care,—that is, such care as was under all the circumstances reasonably consistent with a due regard for the safety of its employees,—in inspecting the switched car for the discovery and remedying of such defects as would render that car an unsafe appliance. In the determination of the question of fact as to whether reasonable care was used in the matter of inspection, it is proper to take into consideration with other circumstances the fact that the car was not then being used for transportation purposes, but was being temporarily kept for unloading in the railroad yard, and also that there was a rule prohibiting the company's employees from making a flying switch without first testing its brakes. In the present case the question of the proximate cause of the accident and the reasonableness of the care exercised by the defendant was one of fact for the jury.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order refusing a new trial. N. P. Unangst, Judge.

The facts are stated in the opinion of the court.

William F. Herrin, P. F. Dunne, and W. S. Spencer, for Appellants.

Sullivan & Sullivan, and Theo. J. Roche, for Respondent.

ANGELLOTTI, J.—A rehearing was granted in this case, after decision in Department, principally because of the complaint of plaintiff that no reason had been assigned for the reversal as to the defendants Nelson and Waters, employees of the principal defendant and fellow-servants of the plaintiff. Upon the reargument, plaintiff's counsel, while urging that the judgments and orders should be affirmed as to the railroad company, stipulated that in the event of reversal as to it, the judgments and orders should also be reversed as to the other defendants. We are satisfied that this course should be adopted.

On further consideration, we see no reason to modify the views expressed in the Department opinion as to certain instructions given to the jury at the request of the plaintiff, and on account of which the reversal was ordered.

Learned counsel for defendant railroad company earnestly urge that the Department opinion be modified in certain particulars. Much of what is said by counsel in this behalf is due, we cannot but feel, to a misconception of the opinion.

Certainly that opinion cannot be construed as declaring that the proximate cause of the accident was the non-adjustment of the brake. The assumption to this effect, of which defendant complains, was expressly limited in the opinion to the discussion of the question as to the alleged negligence of the defendant in the matter of the inspection of the brake, and the instruction given to the jury in that connection, and on account of which the reversal was ordered. It is declared, in effect, over and over again in the opinion that the question as to the proximate cause of the accident was in this case one for the jury. Unless the jury can find upon sufficient evidence that the railroad company was negligent in the matter of the inspection of the brake, and that this negligence contributed directly to plaintiff's injury, there can of course be no recovery by plaintiff. If the accident was wholly due to the negligence of a fellow-servant of plaintiff, or disobedience by him of a reasonable rule enacted for his guidance in the operation of the car, either as to the making of a flying switch at all, or examining the brakes before making the same, there can be no recovery, even though the defendant had itself been negligent. (*Kevern* v. *Pro. etc. Co.*, 70 Cal. 394, [11 Pac. 740]; *Vizelich* v. *Southern Pacific Co.*, 126 Cal.

587, [59 Pac. 129]; *Luman* v. *Golden etc. Co.,* 140 Cal. 707, [74 Pac. 307].) The evidence in the record before us cannot be held, as a matter of law, to show what was the proximate cause, and hence the question is necessarily one for the trial jury. It should also be said in this connection that the showing in the record now before us, as to whether the conditions were such as to make the rule prohibiting a flying switch "except where it would cause great delay to do the work in any other manner" applicable is extremely weak, if, indeed, there can be said to be any showing at all on the subject. It was because of this that the matter was not referred to in the former opinion. If defendant relies on a violation of this portion of the rule, it should make it appear that the work could have been otherwise done without what would have been "great delay" under the existing circumstances. Five or ten minutes might have constituted such a great delay under certain circumstances.

The question as to whether or not the condition of slack in the brake was a mere matter of detail in the operation of the car, the discovery and remedying of which was a part of the regular operation of the car by train hands or switching crew, was discussed in the former opinion in the light of the evidence contained in the record. We are satisfied with the views expressed in the opinion in regard to that question, as applied to the case shown by such record, and see no occasion to add thereto.

The portion of the former opinion reading as follows: "If at the time when an inspection was required of the railroad company in the exercise of reasonable care, by reason of the negligent failure to inspect the brakes at all, or a negligent inspection, the defect remained undiscovered and caused injury, the defendant would be liable for injuries proximately caused thereby, notwithstanding a violation of this rule by Waters, even though had the rule been observed the defect would have been discovered," should be stricken out, together with the words "on the other hand" immediately succeeding.

With this exception the Department opinion is adopted as the opinion of the court in Bank, supplemented by what we have heretofore said.

The judgment, the modified judgment, and the orders denying a new trial are reversed and the cause remanded.

Shaw, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.

The following is the opinion of Department One above referred to rendered on March 14, 1907:—

ANGELLOTTI, J.—This is an action for damages for personal injuries alleged to have been suffered through the negligence of the defendants. Plaintiff was given a verdict against all the defendants for the sum of fifty thousand ·dollars, on which judgment was entered. On motion for a new trial, the trial court required plaintiff to remit ten thousand dollars thereof, as a condition precedent to the denial of the motion. This plaintiff did, and the motion was denied and the judgment modified accordingly. Defendants appeal from the judgment, the modified judgment, and from the orders denying the motion for a new trial.

The defendant Southern Pacific Company, which will hereafter be designated herein as the defendant, is a railroad corporation, owning and operating a railroad in this and other states. Plaintiff was a car-repairer in its employ. At the time of the accident he was, as such car-repairer, working under a car that was standing on what is known as the "cripple track" in defendant's yard at San Luis Obispo, about a quarter of a mile thereon from its junction with the main track. This track was so designated because it was the place where cars were kept while waiting or undergoing repairs. It becoming necessary to run another car in the yard a portion of the way down the cripple track from the main line, where it was to be unloaded, a switching crew, including defendants Nelson and Waters, took the car, attached to an engine, up the main line, and then switched it onto the cripple track by means of what is called a flying switch. The car passed to the cripple track, going at the rate of six to eight miles an hour. The cripple track from the main line was sufficiently down-grade to require efficient brakes to stop the car before it reached the place where plaintiff was working. Defendant Waters was on the moving car, charged with the management thereof, and at a point about a thousand feet from the car under which plaintiff was working first commenced to apply the brake. He at once discovered that the brake had no effect on the car, and, climbing down, endeavored in other ways to

obstruct its movement, but without effect. The car continued to move until it collided with the car under which plaintiff was working, causing that car to run over plaintiff's legs, injuring them to a degree requiring amputation.

Examination subsequently made of the car so switched to the cripple track showed that the reason why the brake did not hold the car was that it had not been adjusted for some time and had become too slack in parts, the result being that as to some of the wheels the brake-shoes would not reach and hold. To remedy this defect all that was essential was to take up the surplus slack, which could be done by shifting a key-bolt in a lever from one hole to another. This was a comparatively simple thing to do, requiring the use only of a hammer and chisel, and occupied only fifteen minutes in this case. This was apparently the only defect in the brake. Plaintiff's claim is that the injury was caused by this defective brake, and that defendant was negligent in not having discovered and remedied the defect.

There was a rule of defendant for the government of its employees which provided that running or flying switches must not be made except where it would cause great delay to do the work in any other manner, and that ''whenever they are made the train must first be stopped and before the engine is again started the switch and also the brakes on the car to be set out must be tested and great care used.'' This rule, so far as it required the testing of the brakes, was entirely ignored by Waters and the remainder of the switching crew on the occasion in question. It is undisputed that no test of the brake was made by the crew before throwing the car onto the cripple track, and that the brake was in no way examined or touched until Waters attempted to use it as heretofore described. The evidence was such that we cannot say that it was not sufficient to sustain a conclusion that if the rule had been observed the defect would have been apparent and the accident avoided.

We may assume for the purposes of this decision that the evidence was such that it must be held that it was the personal duty of the employer to use reasonable care to ascertain and remedy such a defect as here existed, and also that there was evidence which would have sufficiently supported a finding that it failed to use such care, and that this failure was the

proximate cause of the accident. But assuming all this, the question as to whether defendant had so failed to exercise such care in the matter of the inspection of the brake as to make it guilty of negligence, was for the jury to determine, under proper instructions, from the circumstances of the case as shown by the evidence. It could not be liable unless it had failed to exercise such reasonable care. It appears very clear to us that in the determination of this particular question, the violation by Waters of the rule requiring the brakes to be tested before making a flying switch was an immaterial matter. [If at a time when an inspection was required of the railroad company in the exercise of reasonable care, by reason of a negligent failure to inspect the brakes at all, or a negligent inspection, the defect remained undiscovered and caused injury, the defendant would be liable for injuries proximately caused thereby, notwithstanding a violation of this rule by Waters, even though had the rule been observed the defect would have been discovered. On the other hand,]* the rule in no degree added to the liability of the defendant, so as to make it liable to an employee for the negligence of a fellow-employee violating its provisions. It did not operate to make those engaged merely in switching its agents for the inspection and discovery of defects in the cars, for whose negligence it would be responsible to other employees. That duty had been confided to regular car-inspectors, who represented their principal in that matter, and for whose negligence the defendant would be liable. The rule was simply one relative to the manner in which the switching crew should perform the work of switching, prohibiting the making of a flying switch by them without testing the brakes. The distinction between train hands required by rule of the employer to make some examination of the appliances on the cars operated by them for the ascertainment of defects preventing the proper operation thereof while in their charge and those specially charged by the employer with the regular duty of full inspection for the discovery and remedying of defects is noted in several cases cited by plaintiff, especially in the case of *Eaton* v. *New York*

* The portion of this opinion inclosed in brackets was directed to be stricken out by the opinion rendered on the hearing before the court in Bank.

*Central etc. R. R. Co.,* 163 N. Y. 391, [57 N. E. 609, 79 Am. St., Rep. 600]. In that case a recovery was allowed to a brakeman for injuries resulting from a defective brake on a car operated by him, notwithstanding a rule requiring brakemen at all stoppings of the train "to inspect the wheels, brakes, and trucks of the car and report any defects immediately to the conductor," where a reasonably careful inspection of the brake by the employee would have disclosed the weakness of the parts of the brake. It was said therein that while the effect of this rule was to impose on the trainmen the obligation of the examination of the appliances which their service compelled them to use, both for their own protection and the protection of the property of their master and the persons of their fellow-servants, the examination contemplated was not that of an expert inspector, but only such as the ordinary knowledge of brakemen and the time allowed for the purpose consistent with their other duties would enable them to make. It was held that the train hands upon whom such a duty was devolved by rule were not fellow-servants of the regular inspectors of the railroad company. We can see no foundation for any contention that it was intended by this rule to make the train operatives engaged in the many and pressing duties of operation the agents of the company for that thorough inspection of the appliances that is required by law of the employer. The rule was merely one as to the manner of operation, and a negligent failure on the part of one of the switching crew to comply therewith could be, as respects other employees, only the negligence of the employee, and not that of the defendant.

As we read various instructions of the trial court, however, the question as to whether defendant had been negligent in the matter of the inspection of the brakes was made to turn upon the violation of this rule by Waters. The jury was told in instruction No. 15 that if it was the duty of Waters to test the brake before making a flying switch, and he negligently omitted to so do, the negligence of Waters was the negligence of the railroad company. In instruction No. 17 it was substantially said to the jury that if the brake was defective or insufficient by reason of slack, and Waters negligently omitted to inspect said brake, and by reason of such negligence on his part the car was allowed to run on to the cripple track

and collide with the car under which plaintiff was working, inflicting the injury upon him, the verdict must be for the plaintiff and against the defendant, if plaintiff himself was free from fault. Instruction 18 was as follows: "If you believe from the evidence that Waters negligently omitted to test the brakes of the loaded car in his charge on the 16th day of December, 1901, and if you believe that it became or was his duty to test said brakes before or at the time he made a flying switch, if he made such flying switch, then, I charge, that his negligence is the negligence of the defendant corporation, and if by reason of his negligence the car in his charge collided with the car under which Fogarty was working then your verdict must be in favor of the plaintiff and against the defendant corporation for an amount not exceeding the amount prayed for in plaintiff's complaint, if you further believe from the evidence that the plaintiff himself was free from fault.'' The effect of these instructions plainly was to render Waters, solely by reason of this rule, the vice-principal or personal agent of the defendant for the inspection of the car, and to make the violation of the rule by him negligence on the part of the defendant. By them the jury was clearly instructed that if Waters had violated the rule, which concededly he had done, his violation thereof was negligence on the part of defendant, and if the injuries to plaintiff were caused by this violation of the rule, the verdict must be for plaintiff. We can conceive of no sound theory upon which these instructions can be upheld. . Waters was not the personal representative of the defendant in this matter, and his failure to observe the rule enacted by the defendant for its own protection, and the protection of Waters himself and his fellow-employees, was not negligence on the part of the railroad company. As we have intimated, there may have been sufficient evidence to warrant the jury in finding that the defendant had been negligent in the matter of inspecting this car, and that the accident was caused thereby, but such negligence is not shown as a matter of law, and we cannot say, in the face of these instructions, that the jury so found. They may have concluded simply that the failure of Waters to observe the rule caused the accident, and that the only negligence on the part of defendant was this violation of the rule by Waters,

for so concluding their verdict would have been warranted by the instructions. It does not assist that the trial court in two other instructions charged the jury in direct conflict with the instructions above referred to, and in terms too favorable to defendant. The conflicting statements of the court in this regard were each equally positive and plain, and no one can tell which the jury followed.

It follows that a reversal must be had on account of these instructions.

One or two other matters should be discussed for the purposes of a new trial.

Much of the argument of counsel has been devoted to the contention of defendant that the condition of slack in the brake was a mere matter of detail in the operation of the car, not involving any breach of original duty on the part of the employer, and the remedying of which was a part of the proper operation of the car by train hands or switching crew. By this contention it is sought to bring the case within the doctrine of *Helling* v. *Schindler,* 145 Cal. 303, [78 Pac. 710], where the rule that the employer is not liable for defects arising in the daily use of an appliance which are not of a permanent character and do not require the help of skillful mechanics to repair, but which may easily be, and usually are, repaired by the workmen, and to repair which proper and suitable materials are supplied, was applied in the case of an injury to an operative on a planing-machine, the knife of which had become dull and the belt slack by use therein by him and others using the machine with him. (See, also, *Towne* v. *Electric Co.,* 146 Cal. 766, [81 Pac. 124]; *Leishman* v. *Union Iron Works,* 148 Cal. 274, [113 Am. St. Rep. 243, 83 Pac. 30].) It was there said that this rule is, "at least so far as those engaged in the common use of an appliance are concerned," sustained by the great weight of authority. This rule is a qualification of the general rule relative to the duty of the employer to furnish an appliance that is reasonably safe, and to use reasonable care to keep the same in proper repair, and, as stated in *Helling* v. *Schindler,* 145 Cal. 303, [78 Pac. 710], it "relates only to such slight defects attendant upon the operation of machinery as from their nature require remedying at the hands of the operators themselves and as a part of the proper operation

of the machine.'' It was manifestly applicable to such de-
fects as were considered in that case, under the circum-
stances there appearing. We are unable, however, to see the
application of this rule to the case at bar. The management
of cars by train hands is a very different matter from the
operation of a single piece of machinery that is continually
under the direct management of a single employee or a
single group of employees, to whom the slight defects attend-
ant upon the daily use of the appliance, such as the dullness
of knives, become at once apparent. In the case of a railroad
of any considerable extent, any particular car is only very
temporarily in the charge of any particular group of train-
hand employees, and their work in regard thereto has ordi-
narily to do only with its operation as a completed appli-
ance, and consists simply in moving it as the needs of the
railroad company may require. The most that can be said
of the evidence relative to the duty of train hands or switch-
ing crew as regards the work of remedying such a defect as
here existed was that where the same became apparent in
the course of the operation of the car they should take up
the slack. This was simply emergency work. There was
nothing to indicate that it was the general duty of such opera-
tives to keep the brakes in proper condition in this regard,
and clearly such a requirement would generally be imprac-
ticable, considering the other duties and obligations of such
employees. It appears to be thoroughly settled by the au-
thorities that it is the primary and non-assignable duty of
the employer to use reasonable care to discover and remedy
any defect in the car as a completed appliance, and that it
is responsible to any employee injured by reason of its failure
to so do, except, of course, to an employee whose duty it is
to discover the defect, and whose negligent failure to do so
contributes to his own injury. The duty of reasonable in-
spection by the employer for the discovery of any defect
that would render the operation of the car dangerous is
rigidly insisted on, and we can see no reason why this re-
quirement does not include any defect in the adjustment of
the brakes which renders them wholly ineffectual, however
arising, just as fully as any other defect. The employer
cannot escape responsibility in this matter by any delegation
of the duty. (See *Bailey* v. *Rome etc. Co.*, 139 N. Y. 302,

[34 N. E. 918]; *Eaton* v. *New York Central etc. Co.*, 163 N. Y. 391, [79 Am. St. Rep. 600, 57 N. E. 609]; *Chicago etc. Co.* v. *Kneirim*, 152 Ill. 458, [43 Am. St. Rep. 259, 39 N. E. 324]; *Cincinnati etc. Co.* v. *McMullen*, 117 Ind. 439, [10 Am. St. Rep. 67, 20 N. E. 287]; *Sheedy* v. *Chicago etc. Co.*, 55 Minn. 357, [57 N. W. 60]; *Bender* v. *St. Louis etc. Co.*, 137 Mo. 240, [37 S. W. 132]; *Union Stock Yards Co.* v. *Goodwin*, 57 Neb. 138, [77 N. W. 357]; *Galveston etc. Co.* v. *Templeton*, 87 Tex. 42, [26 S. W. 1066]; *Richmond etc. Co.* v. *Burnett*, 88 Va. 538, [14 S. E. 372]; *Texas etc. Co.* v. *Archibald*, 170 U. S. 665, [18 Sup. Ct. 777].) The question as to defendant's negligence, as we look at it, in view of the evidence contained in the record, was simply this: Did defendant fail to use reasonable care,—that is, such care as was under all the circumstances reasonably consistent with a due regard for the safety of its employees,—in inspecting this car for the discovery and remedying of such defects as would render the car an unsafe appliance? If it did not do this, and its failure to do so contributed directly to plaintiff's injuries, and plaintiff himself was not guilty of contributory negligence, it is liable for such damages as will properly compensate plaintiff for such injuries. In determining the question of fact as to whether reasonable care was used in the matter of inspection, it is of course proper to take into consideration with the other circumstances, the fact that the car was not then being used for transportation purposes, but was being temporarily kept for unloading in the San Luis Obispo yard of defendant, and also that there was a rule prohibiting the employees from making a flying switch with it without first testing its brakes. There was some evidence tending to show that the difficulty with this brake was of a character that such cursory test by a switchman as may properly be held to be contemplated by this rule would not disclose it. All these are circumstances which may justly be considered in arriving at a conclusion as to whether reasonable care was exercised by defendant in the matter of keeping the car in proper condition, their effect being solely for the jury. If the accident was in no degree caused by the negligence of defendant, but was wholly due to the neglect of employees in a mere matter of detail in the operation of the car, defendant cannot be held liable.

It cannot be said that the evidence showed plaintiff guilty of contributory negligence as a matter of law. Defendant does not point out specifically wherein the instruction of the court upon this subject was erroneous. If plaintiff was negligent in the matter of not indicating his presence under the car by flags, and his negligence directly contributed to his injuries, there can of course be no recovery.

Other points made by defendant will probably not arise on a new trial, and need not here be considered.

The judgment, the modified judgment, and the orders denying a new trial are reversed and the cause remanded.

Shaw, J., and Sloss, J., concurred.