[L. A. No. 4122.    Department One.—January 22, 1918.]

LOUIS B. DAWSON, Respondent, v. PACIFIC ELECTRIC
RAILWAY COMPANY (a Corporation), Appellant.

NEGLIGENCE — EMPLOYER AND EMPLOYEE — ACTION BY EMPLOYEE FOR
PERSONAL INJURIES — FALL OF SHAKES — HOISTING BY DEFECTIVE
ROPE SLING—EVIDENCE.—In an action by an employee for dam-
ages for injuries sustained by the falling upon him of shakes
which were being hoisted by a rope sling from a wharf and loaded
on flat-cars, evidence found sufficient to warrant the jury in find-
ing that the sling was not in fact strong enough for the purpose
for which it was used.

ID.—CONFLICTING TESTIMONY—QUESTION FOR JURY.—Evidence of de-
fendant's witnesses to contrary import could only raise a conflict
to be resolved by the jury.

ID.—USE OF SHIP'S SLINGS IN CONNECTION WITH THOSE OWNED BY
DEFENDANTS.—The use by the defendant, for its own convenience,
of slings belonging to the ship from which the shakes were being
loaded, interchangeably with the defendant's own slings, left it
open to the jury to find that the obligation of due care required
the defendant to make some inspection of the ropes furnished by
the vessel before employing them in its work.

ID.—TRIAL—REBUTTAL EVIDENCE—DISCRETION OF TRIAL COURT.—Where
in an action for injuries caused by a fall of shakes, due to the
breaking of a rope with which they were being hoisted, the plain-
tiff's case in chief tended to show that the load weighed one thou-

sand five hundred pounds, and the defendant then introduced evidence indicating that the rope in question would carry considerably greater weight, the trial court did not abuse its discretion in allowing the defendant, in rebuttal, to show that the load, at the time of the break weighed over four thousand pounds, it being ordinarily within the discretion of a trial court to allow, in rebuttal, testimony which should have been offered as part of a case in chief.

ID.—INSTRUCTIONS—INVADING PROVINCE OF JURY—USE OF TERM "SAID NEGLIGENT ACTS."—In instructing the jury in a case founded on allegations of defendant's negligence, and supported by evidence of acts claimed by plaintiff to have been negligent on the part of the defendant, the court did not invade the province of the jury by referring to the acts in question as "said negligent acts," when it was apparent, and must have been understood by the jury, that the court was merely referring to a previous description of acts alleged by the plaintiff to have been negligent, and did not assume that the acts were, in fact, negligent.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. John M. York, Judge.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner, A. W. Ashburn, Jr., and W. R. Millar, for Appellant.

E. B. Drake, for Respondent.

SLOSS, J.—The plaintiff brought this action to recover damages for personal injuries alleged to have been caused by the defendant's negligence. A verdict was returned and judgment entered in favor of the plaintiff. The defendant appeals from the judgment, and from an order denying its motion for a new trial.

The defendant, an electric railway company, was engaged in loading bundles of shakes upon two of its flat-cars, on a wharf at Redondo Beach, in Los Angeles County. The shakes were unloaded from a vessel lying at the wharf. They were first hoisted to the wharf. For this part of the work use was made of the machinery of the vessel, which was not under the control or operation of the defendant. From the wharf the shakes were lifted and swung to the cars by means of an electric derrick belonging to the defendant and operated by its servants. A rope sling was put

around a load composed of a number of bundles of shakes, and the load was moved from the ship to the wharf, and again from the wharf to the cars, by hooking the cable of the hoisting machinery or the derrick to a loop in the sling. The plaintiff was in the defendant's employ. His work was to arrange and place the shakes on one of the flat-cars. While one of the loads was being hoisted from the wharf to the cars, and was passing over the plaintiff, the sling broke, causing the shakes to fall upon plaintiff.

The complaint charged negligence on the part of the defendant in two particulars, first, in carrying the bundles from the wharf to the flat-car by means of a rotten, unsound, or defective rope or sling, and, second, by negligently failing to warn the plaintiff that the load was about to pass, and was passing, over him. The answer denied any negligence on the part of the defendant, and set up negligence on the part of the plaintiff himself.

By its verdict the jury found in favor of the plaintiff on these issues. It is urged by the appellant that the evidence is insufficient to show that it had been guilty of any negligence. The rules of law respecting the duty of the employer in cases like the present were fully and clearly stated to the jury. The court charged that the defendant's obligation to furnish safe appliances and a safe place to work was not absolute, but that it extended only to the exercise of ordinary care. Under the instructions, the plaintiff was required to establish by a preponderance of the evidence that the sling was, in fact, defective, and that the defendant either knew of the defective condition, or would, by the exercise of ordinary care, have discovered it. It cannot be doubted that the evidence was sufficient to warrant the jury in finding that the sling was not, in fact, strong enough for the purpose for which it was used. One of plaintiff's witnesses, who had had many years' experience as a sailor in examining and using ropes, testified that he had examined the sling just after the accident, and that it was "black and old looking. . . . It was too old; shouldn't have been used. . . . If I had been there on the ground and examined it . . . I could have seen that it was an old rope that shouldn't have been used." Another witness testified that he had seen the rope, and that "it was very old"; another that "it was pretty black looking. It didn't look anything extra good." The testimony of

contrary import, given by defendant's witnesses, could, of course, do no more than raise a conflict of evidence, and this conflict was to be resolved by the jury. There was, too, ample evidence to justify a finding that defendant had not exercised ordinary care in inspecting the rope to ascertain its condition. Much is made of the fact that the sling in question belonged to the owners of the ship, and that in the course of the work the slings were used as they came from the hold without any further inspection. But the evidence shows that the defendant had a number of slings of its own, and that these were used interchangeably with the slings belonging to the vessel. It appears that neither defendant's foreman, nor any other of its servants, made any inspection of the slings belonging to the ship. While the foreman testified, in general terms, that he had examined the slings, his further examination developed the fact that his inspection had been limited to the slings of the appellant. If the defendant saw fit, for its own convenience, to use the ship's slings in connection with its own, it was certainly open to the jury to find that the obligation of due care required it to make some inspection of the ropes furnished by the vessel, before employing them in its work.

In this connection, the appellant directs our attention to certain testimony indicating that a greater strain was put on the rope while a load was being hoisted from the ship to the wharf than during the subsequent transfer to the cars. From this it is sought to be argued that the hoist from the vessel was a sufficient test of the strength of the rope, and that no further test or examination was necessary. The view of some of the witnesses was that, because the rope had not broken when used to lift a load to the wharf, they would assume that it could be used again without danger. But the soundness of this assumption was a question for the jury. To give it the force of a rule of law would dispense with the necessity of ever inspecting any appliance except just before it was used for the first time. The time is bound to come when the accumulated results of wear, strain, and age may cause the appliance to give way. As was aptly suggested at the trial, the case is like that of the proverbial pitcher that goes once too often to the well.

*McCall* v. *Pacific Mail Steamship Co.*, 123 Cal. 42, [55 Pac. 706], relied on by the appellant, dealt with a situation

entirely different from that presented by the record before us. The facts in the McCall case, as stated by the court in its opinion, were that the rope had been properly inspected before use, and that its breaking was due to "a latent defect not discernible under an examination conducted with ordinary care." The consequent holding that no negligence was shown can, therefore, not apply to a case in which the evidences authorizes a finding that there was no inspection, and that such inspection would have disclosed the defect.

The testimony offered by plaintiff in his case in chief tended to show that the load of shakes weighed one thousand five hundred pounds. After the defendant had offered evidence indicating that the rope in question would carry a considerably greater weight, the plaintiff, on rebuttal, was allowed to offer testimony that the load contained about 115 bundles, weighing 40 pounds each, and consequently weighed over four thousand pounds. It is ordinarily within the discretion of the trial court to allow, in rebuttal, testimony which should have been offered as a part of the case in chief. We think the ruling here made did not constitute an abuse of discretion. While the defendant was putting in its case, plaintiff's counsel suggested that he might have more definite testimony than that already given about the weight of the load, and when he offered his testimony in rebuttal, he stated to the court that he had just learned the facts which he desired to then present. If defendant was surprised by the new testimony, it should have asked an opportunity to meet it. No such request was made. The testimony was relevant to the charge of negligence made in the complaint, viz., that the sling was unsound and defective. A rope may be sufficiently strong to lift a load of one thousand five hundred pounds, and entirely too weak to support a weight of four thousand pounds. The question of the sufficiency of the rope was relative to the work which the rope had to do, and the weight of the load was, therefore, a proper subject of inquiry. At this point we may notice defendant's claim that the court erred in refusing to charge the jury, in effect, that they could not find the defendant negligent in respect to the size or weight of the load of shakes being carried at the time of the accident. No such issue was suggested by the evidence we have been discussing, or otherwise, and there was no occasion to give this negative charge. Furthermore,

the jury was expressly told that the plaintiff could not recover unless he established one or the other of the charges of negligence set out in his complaint.

The court sustained an objection to a question asked on cross-examination of plaintiff's witness Wennaberg. We need not discuss the propriety of this ruling, since it appears that virtually the same question was put to the witness, and answered, at a later stage.

The court gave an instruction in which, after defining the two elements of negligence charged by the complaint, it told the jury that "if you believe from the evidence that defendant was guilty of both or either of said *negligent acts,* and that the same or either contributed directly or proximately to cause the accident, then the plaintiff may recover in this case . . ." The criticism is made that the use of the italicized words assumes that the acts in question were negligent, and thus invades the province of the jury. We think, however, that the court was merely referring to its preceding description of acts *alleged by the plaintiff* to have been negligent. Furthermore, in view of other instructions, which specifically directed the jury that the burden of proof was upon the plaintiff to establish a want of ordinary care, there is no room for the belief that the jury could have been misled. The real purpose of the charge in question was to direct the attention of the jury to the point that it was not necessary for the plaintiff to establish every act of negligence asserted by him, but that it was sufficient for him to make out either ground alleged. We have no doubt that the instruction was thus understood.

The judgment and the order appealed from are affirmed.

Shaw, J., and Richards, J., *pro tem.,* concurred.