[S. F. No. 17735. In Bank. Dec. 7, 1948.]

KATHERINE DEVENS, Appellant, v. JOSEPH GOLDBERG, Respondent.

Melvin M. Belli, Henry G. Sanford, Van H. Pinney and Lou Ashe for Appellant.

George C. Faulkner, R. Edward Burton and Wilkie C. Courter for Respondent.

GIBSON, C. J.—Plaintiff brought this action for personal injuries sustained in the scope of her duties while employed

by defendant in his home as a part-time cleaning woman. There were no eyewitnesses to the accident, and plaintiff, suffering from retrograde amnesia, was unable to remember anything about its actual occurrence. She recalled that she went into the bathroom of defendant's home to get a rug, which she intended to shake over the wooden guard railing on the back porch of the house, but remembered nothing further until she regained consciousness in a hospital. She was found injured and unconscious on the ground below the porch, and near by were the rug and part of the railing which had broken loose from its position. She has appealed from a judgment rendered for defendant notwithstanding a verdict in her favor.

The first ground of the motion for judgment notwithstanding the verdict was that the only cause of action stated by the complaint was one under sections 3706-3709 of the Labor Code and that it was barred by a complete defense pleaded in defendant's amended answer. The complaint alleged that defendant was negligent, that the Industrial Accident Commission had found that plaintiff employee and defendant employer were subject to the Workmen's Compensation Act, and that defendant had wilfully failed to insure. After this action was filed, the order of the commission was annulled in *Goldberg* v. *Pacific Emp. Ins. Co.*, 70 Cal.App.2d 472 [161 P.2d 272], which held that neither the employee nor the employer was subject to the act. These facts were pleaded in the amended answer. Plaintiff did not amend her complaint, and the trial proceeded apparently on the theory that defendant was liable under sections 2800-2801 of the Labor Code in that he negligently failed to maintain a safe place for her to work.

By sections 3706-3709 of the Labor Code, the Legislature has provided a remedy for personal injuries for an employee covered by the act whose employer fails to secure the payment of compensation. The injured employee may sue the employer for damages, and in such an action the negligence of the employer is presumed. The employer may not defend on the ground that the employee was contributorily negligent or assumed the hazards attending employment or that he was injured through the negligence of a fellow servant. The plaintiff may attach the property of the employer, and the action, being maintainable against "the legal representative of any deceased employer," does not abate with the employer's death. (*Rideaux* v. *Torgrimson*, 12 Cal.2d 633 [86 P.2d 826].) An employee not covered by the act may bring an action for damages under sections 2800-2801 of the Labor Code, in which

action the burden of proof of negligence is on the employee, and the employer may, in certain circumstances, rely on contributory negligence to bar recovery or diminish the amount of damages to be awarded. The action abates upon the death of the employer. (*Rideaux* v. *Torgrimson*, 39 Cal.App.2d 273 [102 P.2d 1104].)

While there are differences between an action brought under sections 3706-3709 and one brought under sections 2800-2801, both are based upon the obligation of the employer to exercise due care with regard to the safety of his employees. The same facts relating to negligence will support a recovery in each, and the parties and their relationship are identical. Although the remedies are somewhat different, the obligation sought to be enforced is the same. If the allegations referring to defendant's duties under the act are disregarded, the complaint states facts sufficient to support a recovery for negligence against the defendant employer, and the question is whether the form of the pleading misled defendant to his prejudice in presenting his defense. (See Code Civ. Proc., § 469.)

It does not appear that defendant was so misled or prejudiced. The instructions indicate that the case was not tried on the theory that defendant was liable under sections 3706-3709, but that it was tried as an action under sections 2800-2801 against an employer not subject to the act. Plaintiff was not given the benefit of the statutory presumption of negligence which would have been applicable if the action had been tried under sections 3706-3709, and the jury was given an instruction on the law of contributory negligence which was proper only if the action was within sections 2800-2801. Moreover, the question whether the complaint stated only a cause of action within sections 3706-3709 was raised' by defendant upon motion for nonsuit, and the denial of the motion was an indication to him that the trial was proceeding upon the theory that he was liable as an employer not subject to the act.

The second ground of defendant's motion for judgment notwithstanding the verdict was that plaintiff failed to prove any negligence in the maintenance of the premises. Such a motion may properly be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from plaintiff's evidence, the result is a determination that there is no evidence sufficiently,

substantial to support the verdict. (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 650 [122 P.2d 576].)

The back porch of defendant's home was approximately 5 feet above the ground, and there was a single wooden railing constructed of 2″ x 4″ lumber 3 feet above the porch floor. Plaintiff was 5 feet tall, weighed 105 pounds, and was not subject to spells of fainting or dizziness. For six years she had been in the habit of shaking the bathroom rug over the railing, and it is clear from the evidence that this is what she was doing when the accident occurred. She testified that the only time she put her hand on the railing was when she went downstairs and that she came in contact with the railing about twice a week when she shook the bathroom rug over it. She was asked whether the railing seemed to be "firmly fixed and solid, and in place," and she replied, "I thought so."

A next door neighbor testified that at the time of the accident she heard some moaning coming from the direction of defendant's house, and on investigating she found plaintiff lying unconscious on the ground below and beyond the edge of the porch. The railing, which was lying near her, was splintered and broken and appeared to be decayed. Another witness testified that the railing received "hard usage" and that persons using the back porch customarily slammed the screen door against the railing.

Defendant testified that he had used the porch almost daily for several years prior to the accident, that he frequently put his hand on the railing while picking up milk bottles, and that he had never noticed that it was loose. It did not appear, however, that he had ever inspected the railing for the purpose of determining its strength or soundness. The man who repaired the porch after the accident testified that the railing had torn loose from the nails attaching it to the upright posts on the porch and that it was not decayed. The porch and railing were subsequently replaced after this action was commenced. All of the old lumber was destroyed and was not available for inspection or introduction in evidence at the trial.

■ The rule is well established that an employer is under a duty to furnish a safe working place for his employees. ■ This duty requires the employer to exercise ordinary care and "to make a reasonably careful inspection at reasonable intervals to learn of dangers not apparent to the eye." (*Cordler* v. *Keffel*, 161 Cal. 475, 479 [119 P. 658]; *Fogarty* v. *Southern Pacific Co.*, 151 Cal. 785, 795 [91 P. 650]; see *Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500, 503 [143 P. 714]; *Russell* v.

*Pacific Can Co.*, 116 Cal. 527, 531 [48 P. 616] ; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532, 539 [38 P. 410] ; Prosser, Torts [1941] p. 507; Rest., Agency, § 503.) "The extent and frequency of inspections depend upon the nature of the things to be inspected, the danger to be anticipated if inspections are not made, . . . and all other factors involved in the determination of the reasonableness of conduct." (Rest., Agency, § 503, p. 1180.) The character of the work and the circumstances of the particular case are to be considered in determining whether the duty has been performed. (*Cordler* v. *Keffel*, 161 Cal. 475, 479 [119 P. 658] ; *Fogarty* v. *Southern Pacific Co.*, 151 Cal. 785, 796 [91 P. 650] ; *Dyas* v. *Southern Pacific Co.*, 140 Cal. 296, 308 [73 P. 972] ; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532, 539 [38 P. 410].)

The case of *Baddeley* v. *Shea*, 114 Cal. 1 [45 P. 990, 55 Am. St.Rep. 56, 33 L.R.A. 747], relied upon by defendant, did not involve an employer-employee relationship. The injured party in that case was a business visitor, and it has been recognized that "The relation of master and servant has certain peculiarities which have given to the servant a somewhat different degree of protection than that which is given to other classes of business visitors." (Rest., Torts, § 332, p. 901.) Whatever may be the rule with respect to business visitors generally, the character and extent of the duty owed by an owner of premises to his employee is clearly settled in this state by the decisions cited above. Furthermore, although the Baddeley case is possibly explainable on its facts, the opinion contains language which is clearly out of line with later decisions of this court and the Restatement rule with respect to business visitors. (See *Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal.2d 394, 400 [170 P.2d 5] ; *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841] ; *Mondine* v. *Sarlin*, 11 Cal.2d 593, 597 [81 P.2d 903] ; Rest., Torts, § 343.)

It was for the jury to determine whether a defective condition existed, whether a reasonable inspection would have revealed the defect, and what constituted a reasonably adequate inspection in all the circumstances. (See *Neale* v. *Atchison etc. Ry. Co.*, 178 Cal. 225, 228 [172 P. 1105] ; *Fogarty* v. *Southern Pacific Co.*, 151 Cal. 785, 796 [91 P. 650] ; *Goggin* v. *D. M. Osborne & Co.*, 115 Cal. 437, 440 [47 P. 248] ; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532, 539 [38 P. 410].)

The evidence clearly supports the implied finding of the jury that the railing was defective and that a reasonable inspection would have disclosed the defect. The fact that plaintiff

was not aware of the dangerous condition does not require a conclusion that the defect would not have been revealed upon a reasonable examination by defendant. ■ Plaintiff was under no duty to make an inspection to discover defects, and she had a right to rely upon her employer's means of knowledge and his duty of inquiry. (See *Starr* v. *Kreuzberger,* 129 Cal. 123, 129 [61 P. 787, 79 Am.St.Rep. 92]; *Magee* v. *Northern Pac. R. R. Co.,* 78 Cal. 430, 437 [21 P. 114, 12 Am.St.Rep. 69]; *Majors* v. *Connors,* 162 Cal. 131, 135 [121 P. 371].)

■ It is urged, however, that since defendant said he used the railing and it gave no indication of being unsound, the evidence will not support a finding that he was negligent. There are two answers to this contention. First, we cannot say as a matter of law that the use which defendant testified he made of the railing was sufficient to discharge his duty of inspection. As we have seen, the character and extent of the inspection required depend upon the danger to be anticipated and other factors involved. ■ It is a matter of common knowledge that all wooden structures are liable to get out of repair and that the exercise of care is necessary to guard against the wear and tear of use and time. (*Dyas* v. *Southern Pacific Co.,* 140 Cal. 296, 309 [73 P. 972]; *Russell* v. *Pacific Can Co.,* 116 Cal. 527, 531 [48 P. 616].) ■ The erection of a railing on an elevated porch is a recognition of the danger that would be attended by a fall if it gave way. Here we have a wooden railing which had been in place for at least six years and had never been inspected for the. purpose of testing its strength and safety. The defect in the railing was itself some evidence of a failure in the duty to inspect (see Rest., Agency, § 503, com. g), and the jury was entitled to draw reasonable inferences from all the facts and circumstances and base a finding of negligence thereon. In these circumstances it was for the jury to determine whether the use which defendant said he made of the railing constituted an adequate inspection in the discharge of his duty as an employer.

■ The second answer to defendant's contention is that the jury was not required to accept his testimony as to the nature and extent of his use of the porch railing. ■ In passing on his credibility and the weight to be given his testimony, the trier of fact could consider his interest in the result of the case, the manner in which he testified, and the contradictions appearing in the evidence. (See *Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521].) Since the jury's implied finding

that defendant was negligent is supported by the record, we need not discuss the possible application of res ipsa loquitur.

 Defendant also contends that there was no evidence to show that the collapse of the railing caused the injury. Causation may be proved by circumstantial evidence, and whether the defective condition of the railing was the proximate cause of the injury was a question for the jury. (See *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872]; *Rae* v. *California Equipment Co.*, 12 Cal.2d 563, 570 [86 P.2d 352]; *Anderson* v. *Seropian*, 147 Cal. 201, 216 [81 P. 521].) In the case of *Bock* v. *Hamilton Square Baptist Church*, 219 Cal. 284 [26 P.2d 7], a woman fell when a porch railing collapsed. There were no eyewitnesses, and the woman was unable to tell what occurred because she was rendered unconscious by the fall. In answer to the contention that the evidence did not establish that the negligence of defendant was the proximate cause of the accident, it was said at page 288: "From the evidence before the court it could be properly inferred that the injured woman leaned against the defective railing while in the act of hanging out the towel and that said railing gave way, thereby precipitating her to the ground below." (See also *Robertson* v. *Weingart*, 91 Cal.App. 715 [267 P. 741].)

The judgment for defendant is reversed, and the trial court is directed to enter judgment for plaintiff in accordance with the verdict.

Shenk, J., Edmonds, J., and Carter, J., concurred.

TRAYNOR, J.—I dissent.

The cause of the accident is unknown. The plaintiff does not remember it and cannot explain it, and there were no eyewitnesses. The railing may have given way as plaintiff leaned against it while shaking a rug over it. She may have tripped before reaching the railing or fallen against it after coming out the door. Whatever the cause of the accident, in my opinion there is no evidence that defendant knew of a defect in the railing or would have known of it by the exercise of reasonable care. Defendant's duty to plaintiff was to exercise ordinary care to provide her with a safe place to work and periodically to make reasonably careful inspections of the premises to ascertain whether they were in a dangerous condition. (*Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500, 503 [143 P. 714]; *Cordler* v. *Keffel*, 161 Cal. 475, 479

[119 P. 658] ; *Russell* v. *Pacific Can Co.*, 116 Cal. 527, 531 [48 P. 616] ; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532, 539 [38 P. 410] ; Prosser, Torts, 507 ; Rest., Agency, § 503.) The undisputed evidence establishes that defendant performed this duty.

Until the accident the porch and railing were in continuous use for a period of five or six years. Every witness who testified regarding the condition of the railing before the accident, including the plaintiff herself*, declared that the railing appeared to be firmly fixed and solid. In the light of this undisputed evidence, defendant's daily use of the railing, in

---

* Plaintiff testified as follows: "Q. During the several times that you would go in and out of this house during that time did you ever touch that railing? A. Oh yes, no doubt.

"Q. Did you touch it every day? A. I don't remember.

"Q. Did you touch it more than once during the whole time that you were there? A. I went out there to do some things. I can't remember. I put my hand on the railing when I went downstairs, that is probably the only time I would touch that railing. I would have to go over to the rail if I wanted to put my hand on it.

"Q. Now, you say—what did you use that back porch for—when you were actually doing your housework? You spoke about this rug, shaking a rug. A. That is practically what I would use it for—shaking my dust mop over it.

"Q. Did you only do that once during the two months that you were there? A. No, oh, no. I did that every time I cleaned the bathroom.

"Q. How often did you clean the bathroom? A. Well, I would say I worked there three times a week, two times a week.

"Q. And you would come in contact with that railing at least two times a week? A. Yes.

"Q. Now, during that time did you ever find anything wrong with that railing? A. No.

"Q. Did it ever shake with you? A. No.

"Q. Did you see anything loose about it? A. No.

"Q. Did it seem firmly fixed and solid, and in place? A. I thought so.

"Q. How many years out of that 14 years had the Goldbergs lived at this particular house? A. Five, I think.

"Q. Well, about five years I think. It might have been six for all you know, is that correct? A. I am not very good at remembering.

"Q. Well that is very close. It is, you say, about five years that you remember out of the—— A. (interrupting). Yes.

"Q. Now, during that whole five years you worked for the Goldbergs, did you not? A. Yes.

"Q. And you went in and out of this door during that five years? A. Yes.

"Q. And you touched this railing during your work in that five years, did you not. A. Yes.

"Q. You came into contact with it all the time.

"Mr. Belli. I think that has been asked and answered?

"The witness. Yes.

"The Court. Overruled. Go ahead.

" . . . . . . . . . .

"Q. Now, Mrs. Devins, you say that it was your custom to shake the rug, is that right? A. Yes.

"Q. Will you show the jury here just what you do when you shake

the course of which no conditions appeared that would lead a person of ordinary prudence to suspect defects, was sufficient to discharge his duty of inspection. The scope of a reasonable inspection depends on all of the circumstances viewed in the light of the reasonably foreseeable risks involved. (Rest., Torts, § 307, com. b; Rest., Agency, § 503, com. c.) Thus regular use constitutes a sufficient inspection when defects would ordinarily become apparent in the course of such use. Defects in wooden railings fall in this category, for ordinarily there is unsteadiness in the railing that gives warning of their existence. The majority opinion, however, takes the view that some undisclosed type of inspection might have prevented the accident in this case. Neither visual inspection nor daily use that reveals no infirmity is enough. Apparently the ordinary householder is responsible for defects that would be revealed only to a trained building inspector.

Heretofore a householder had no duty to look for latent defects, when he had no notice of any facts that would induce a person of ordinary prudence to suspect their existence. Thus, it has been held that the duty of a householder to maintain a platform at the bottom of his front stairs in a reasonably safe condition was discharged as a matter of law when it appeared that defendant had no knowledge of any latent defects and the everyday use of the platform gave no indication that it had become unsafe. (*Baddeley* v. *Shea*, 114 Cal. 1 [45 P. 990, 55 Am.St.Rep. 56, 33 L.R.A. 747].) In speaking of the defendant's duty to inspect this court said: ''It should be borne in mind, however, that the ultimate question of law to be decided is whether it was the duty of the defendant, under the circumstances proved, to examine his platform for

---

the rug? A. Well, I take it—take the rug and shake it like this (indicating).

''Q. Where did you go? A. Over the railing.

''Q. And will you come up—to assume that this is your railing—will you come up to this railing? A. I would shake it.

''Q. That is a little bit high. Come up to this railing down here where it would about hit on you and show us what you do. A. I shake it like this, shake a rug like that (indicating).

''Q. Just wiggle it a couple of times?

''A. Why I can't shake it very hard right in front of the lady. Yes. I would shake it very hard if I would shake it out.

''Q. You would really shake it hard? A. Yes.

''Q. You had done the same thing over a course of six years at the residence of the Goldbergs, had you? A. Yes.

''Q. That same thing over this same railing? A. Yes.

''Q. And during that time when you were shaking it vigorously as you have outlined did that railing ever indicate in any way that it was either weak or loose? A. No.''

the purpose of ascertaining whether there were latent defects in it; for, if such was not his duty, his omission to make such examination was not negligence in any degree, and the defendant was entitled to a verdict (*Smith* v. *Whittier*, 95 Cal. 279 [30 P. 529]) ; and whether or not such was his duty depends entirely upon whether or not he had notice of facts which would induce a man of ordinary prudence to suspect the existence of a latent defect in consequence of which danger of injury to person or property might be reasonably apprehended; and when, in such a case, the facts, of which one charged with negligence had notice, are known and undisputed, the question of duty to examine for latent defects is a pure question of law, though it may involve a question as to the degree of care required, which is also a question of law when the facts are given.'' (*Baddeley* v. *Shea, supra,* 114 Cal. 1, 7.) The scope of a reasonable inspection by a householder thus depends on what conditions if any are apparent that would lead a reasonably prudent person to suspect the existence of latent defects. In this case not only did defendant not know of any facts that might lead him to suspect the existence of such a defect, but the solidity of the railing during his continuous use and the regular use by others was a constant assurance to him that it was in a sound condition.

None of the cases cited in the majority opinion suggests that the duty to inspect goes beyond what defendant did here. In *Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500 [143 P. 714], and *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532 [38 P. 410], the defendants' failure to inspect was not in issue: the defendants were negligent in not providing a safe place to work at the outset. In the former case decedent was killed by a rock falling from the roof of an underground mining station. At the time of the accident the station was not completely timbered, although the necessary timbers had been brought to the station two weeks before the accident. In rejecting the defenses of assumption of risk and contributory negligence the court pointed out that it is the duty of the employer and not the employee to inspect the premises for dangerous conditions. In the latter case plaintiff's injury was caused by the slipping of a board on a platform. The board rested loosely without nailing or other fastening as it had for some years before the accident. The court rejected the defense of assumption of risk and again pointed out that the duty of inspection rested upon the employer and not the employee.

In *Cordler* v. *Keffel,* 161 Cal. 475 [119 P. 658], there was no evidence of regular use by defendant of a well-covering over which people might walk, and it was held that the duty to inspect was not discharged by one inspection in a period of 11 years.

In *Russell* v. *Pacific Can Co.,* 116 Cal. 527 [48 P. 616], plaintiff was injured by steam discharged into an outside toilet. The end of the steampipe consisted of an elbow 18 inches long that defendant claimed extended directly downward. The place was examined after the accident, and the elbow of the steampipe extended directly upward. The steampipe had not been inspected in any way by defendant for a period of four years before the accident.

In *Fogarty* v. *Southern Pacific Co.,* 151 Cal. 785 [91 P. 650], plaintiff was injured as a result of a defective brake on one of defendant's cars, and an examination made after the accident indicated that the brake had not been adjusted for some time. In violation of company rules no test of the brake had been made immediately before the car was set in motion.

In *Dyas* v. *Southern Pacific Co.,* 140 Cal. 296 [73 P. 972], there was evidence that the structural defects causing the accident had caused a similar accident five years earlier and that no repairs had been made in the interim.

In *Neale* v. *Atchison etc. Ry. Co.,* 178 Cal. 225 [172 P. 1105], the question of the adequacy of inspection was held to be for the jury when plaintiff introduced evidence that locomotives wobbled when passing over the track in question and defendant introduced evidence showing recent inspection.

In *Dawson* v. *Pacific Electric Ry. Co.,* 177 Cal. 268 [170 P. 603], no inspection was made of the rope sling that broke and caused the accident before it was put in use.

In *Ronconi* v. *Northwestern Pac. R. R. Co.,* 35 Cal.App. 560 [170 P. 635], it was held that a mere visual inspection of a wooden bar used in propelling a railroad handcar was not sufficient to discharge the employer's duty after a defect had been called to the foreman's attention.

None of these cases is authority for the proposition that the duty to inspect a porch railing is not discharged as a matter of law when defendant's everyday use of the railing indicates that at no time was there any weakness or shakiness therein.

The undisputed evidence that defendant discharged his duty of inspection also precludes invoking the doctrine of res ipsa loquitur. That doctrine applies only if it can be said that in the light of common experience it was more likely than

not that the accident was the result of defendant's negligence. (*LaPorte* v. *Houston, ante,* p. 167 [199 P.2d 665].) "Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply." (Prosser, Torts, 297.) In the present case the railing at all times appeared to be firmly fixed and solid. It is thus as probable that it gave way because of some extraordinary force or because of some latent defect no reasonably prudent person would have foreseen as that it gave way because defendant was negligent.

In my opinion the principles set forth by this court in *Baddeley* v. *Shea, supra,* 114 Cal. 1, 5-7, are controlling here and compel an affirmance of the judgment.

Schauer, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied December 30, 1948. Traynor, J., Schauer, J., and Spence, J., voted for a rehearing.